[No. B047075. Second Dist., Div. Two. Oct. 4, 1990.]

WESTSIDE SANE/FREEZE et al., Plaintiffs and Respondents, v. ERNEST W. HAHN, INC., et al., Defendants and Appellants.

COUNSEL

Pepper, Hamilton & Scheetz, Thomas J. Leanse and Suzanne Ilene Schiller for Defendants and Appellants.

Robin S. Toma, Carol A. Sobel, Mark D. Rosenbaum and Paul L. Hoffman for Plaintiffs and Respondents.

OPINION

**FUKUTO, J.**—This appeal from an order granting a preliminary injunction arises from appellants' tenacious, erroneous view that the California constitutional rights of free speech and petition at shopping centers, recognized in *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341], affirmed *sub nom. Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74 [64 L.Ed.2d 741, 100 S.Ct. 2035], are limited to activity connected with enrollment of signatures on petitions. We affirm the superior court's decision that *Pruneyard* is not thus limited, and also reject appellants' claim that the injunction restraining them from barring leafletting and expression unconnected with signature gathering accomplishes an unconstitutional taking of their property. Resolving further issues as to the scope of the injunction, we find the trial court did not abuse its discretion in applying it to appellants' numerous California shopping centers, or in preliminarily enjoining collection of a cleaning deposit in excess of $50. However, we do direct that the injunction's description of the activity to which it applies be modified, to avoid vagueness and potential overbreadth.

FACTS

This case originated with appellants' refusal to permit plaintiffs to engage in certain "grassroots" political activity at the Fox Hills Mall shopping center (Mall) in Culver City. Plaintiff Westside Sane/Freeze (Sane) is an unincorporated association dedicated to "peace and nuclear sanity"; plaintiffs Andrew Tonkovich and Bernie Eisenberg are its director and steering committee member. Appellants Ernest W. Hahn, Inc. (Hahn Inc.), Hahn Property Management Corporation (Hahn Management), and H,B-H Associates are related corporations and a partnership which own and operate the Mall. Appellant Jo Anne Sudjian Brosi is its general manager.

The various declarations submitted on the motion for preliminary injunction established as follows. The Mall is a trilevel shopping center covering 1.3 million square feet, of which 907,921 are leasable. It houses

approximately 136 tenants, including 3 major department stores. In November 1988, Tonkovich desired to have Eisenberg and himself distribute literature from a table in the Mall's common area and speak to passing patrons. To this end, he inquired of the Mall's business office, which sent him an "Application for Access to Center for Political Petitioning and Related Activities," together with a six-page statement of "Policy and Guidelines" (the Policy), a one-page "Policy Regarding Voter Registration," and five pages of "Rules for Political Petitioning and Related Activities," marginally dated "10/88" (the Rules).

The Policy stated that, with the exception of Mall-sponsored activities or those protected by the National Labor Relations Act, "if proposed activities are not within the scope of the definitions of political petitioning, as set forth in the Rules, . . . then they are prohibited in the common area."[1] The accompanying Rules provided: "The following are intended as reasonable time, place and manner rules for political petitioning and related activities. 'Political petitioning' is the collection of signatures on petitions directed to a governmental entity or official. 'Related activities' are limited to conversations relating to the subject matter of the petitions, distribution of written materials relating to the subject matter of the petitions and the display of signs relating to the subject matter of the petitions."

On November 23, 1988, Tonkovich completed and mailed to the Mall Sane's application for access. In a space for "Subject Matter of Petition," which requested inclusion of a copy of the petition and associated materials to be distributed,[2] Tonkovich entered, "We will not collect signatures for a petition. We will distribute literature on the issue of peace and disarmament, including brochures and leaflets on events and membership. We will talk with interested mall patrons, making ourselves available for questions and further information." Six days later, Tonkovich received a note from appellant Brosi's predecessor, stating the application had been rejected because "The request does not comply with the rules for Political Petitioning since signatures are not being collected for a petition and voters are not being registered."

In early January 1989, Tonkovich telephoned the Mall several times to ascertain if its policy had or could be changed. He was told by an assistant

---

[1] The Policy's preamble also avowed: "The United States Supreme Court established certain rights for individuals, pursuant to the California Constitution, which allows them access to your common area for purposes other than shopping, subject to reasonable time, place and manner rules. Although The Hahn Company does not agree with the Court's decision, The Hahn Company is committed to honor and abide by the law. It is in that regard that the Rules . . . have been developed."

[2] The next space on the application called for "Governmental Agency, Entity or Officeholder to Whom the Petition is Directed."

that distribution of flyers would not be permitted. This renewed refusal led to the present litigation.[3]

In addition to appellants' denial of access for nonpetition-related speech and leafletting, plaintiffs challenged a number of other features of appellants' Rules and Policies, concerning the timing, location, and preconditions for center appearances, including a prohibition against soliciting funds. However, the motion for preliminary injunction sought to restrain pendente lite only the petition limitation and the Rules' requirement that an applicant proposing to distribute literature pay a $75 cleaning deposit, to be refunded about two weeks after the leafletting.

Concerning this deposit, appellant Brosi declared that it takes at least 45 minutes to walk through the entire interior and perimeter of the Mall structure, and that the Mall's average labor expense for maintenance and security personnel was $10 to $13 an hour. In response, plaintiffs presented documents obtained through discovery, indicating that these employees' pay rates (not necessarily including all taxes and benefits) were less than half that.

Plaintiffs also adduced evidence that the Rules and Policies operative at the Mall were in effect at a number of other California shopping centers managed by one or more of the appellant corporations or their related entities. In addition to the incidents mentioned above (fn. 3, *ante*), a supervisory employee of appellant Hahn Management testified that the Rules and Policies were in effect at all of its managed centers within her "region," except for the Plaza Pasadena (which is involved in other, similar litigation). Further, a "Hahn Memorandum," addressed to "All California Center Managers," announced (with copy attached) that the Rules and Policies, "dated 10/88 . . . have been adopted for use at your center."

The trial court ruled that the constitutional rights of speech and petition recognized in *Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d 899, were not limited to situations involving "the act of obtaining someone's signature . . . ." The court rejected appellants' objection to the injunction's extending to other shopping centers they manage and perhaps own,[4]

---

[3] Appellants' refusal to permit political leafletting or speaking to patrons at the Mall was further documented by representatives of other groups who had been so refused. There was also evidence that other shopping centers owned or managed by the corporate appellants had refused to allow leafletting on behalf of political candidates (including the 1988 Democratic candidate for President).

[4] Appellants' counsel acknowledged the evidence to be that "Hahn Property Management Corporation has management contracts with respect to a number of shopping centers within the State of California." He averred, however, that the Hahn Inc. did not own any of these

observing that it would be "absurd" to allow or require case-by-case litigation concerning the underlying principle. Concerning the cleaning deposit, the court first resolved to restrict it to an amount shown to be reasonably related to the costs expected to be incurred because of leafletting. However, when appellants' counsel suggested that this would be "inconsistent" with a ruling by Division One of this court upholding a $50 deposit in *H-CHH Associates* v. *Citizens for Representative Government* (1987) 193 Cal.App.3d 1193, 1212 [238 Cal.Rptr. 841], the court determined to limit the deposit to that sum, based on the "showing that 75 is too high and . . . consistent with appellate authority . . . ."[5]

Following an exchange of proposals and objections, the trial court issued its preliminary injunction, barring appellants from enforcing a deposit of more than $50, and restraining them from "[b]arring plaintiffs . . . and any other individuals or groups, from engaging in peaceful and orderly leafletting or speaking of non-commercial ideas, or any other form of protected political expression, within the Fox Hills Mall or any other shopping center in California which is owned and/or managed by any or all of the defendants, and by those entities which are wholly or under majority control of any or all defendants, their subsidiaries or affiliates, except within those shopping centers subject to court orders whose terms conflict with the terms of this order . . . ." (Fn. omitted.)[6]

## DISCUSSION

### I. CONSTITUTIONAL ISSUES.

#### A. The Scope of Pruneyard Rights.

■ Appellants' primary objection to the preliminary injunction repeats their position that triggered this litigation: that the California constitutional rights our Supreme Court recognized in *Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d 899 (*Pruneyard*), affd. *sub nom. Pruneyard Shopping Center* v. *Robins, supra,* 447 U.S. 74 (*Pruneyard II*), embrace only the solicitation of petition signatories at shopping centers, and conversely that

---

centers, and that the appellant partnership (H,B-H Associates) owned the Mall and no other. The complaint alleges that Hahn Inc. is the general partner of the partnership.

[5] The court rejected plaintiffs' contention that the two-week retention period should be preliminarily enjoined as unreasonable.

[6] Plaintiffs initially had proposed the injunction extend to "peaceful and orderly leafletting, oral communication of ideas, or any other constitutionally protected expressive conduct." Appellants' counterproposal was "peaceful and orderly leafletting or speaking of political ideas." Plaintiffs responded with the language the court adopted. (Yet other, similar formulations were presented in the complaint and in plaintiffs' notice of motion for preliminary injunction.)

the relevant constitutional provisions do not protect and restrain from prohibition there other speech and leafletting. A review of *Pruneyard*, its antecedents, and its progeny demonstrates that this contention is devoid of merit.

*Pruneyard* involved a shopping center's refusal to permit high school students to solicit signatures for a petition, protesting a United Nations resolution about "Zionism," which was to be sent to the White House. In resolving the students' claim of constitutional entitlement to access, the California Supreme Court confronted the United States Supreme Court's holding, in *Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219] (*Lloyd*), that the First Amendment to the United States Constitution did not require permission for leafletting at a private shopping center, unrelated to the center's activities. The *Lloyd* decision, based primarily upon an absence of "state action," had previously led the Supreme Court to vacate, in *Diamond* v. *Bland* (1974) 11 Cal.3d 331 [113 Cal.Rptr. 468, 521 P.2d 460] (*Diamond II*), a First Amendment-based injunction requiring a shopping center to allow leafletting and signature solicitation for a proposed ballot initiative, which the court had previously ordered in *Diamond* v. *Bland* (1970) 3 Cal.3d 653 [91 Cal.Rptr. 501, 477 P.2d 733] (*Diamond I*). In *Diamond II*, Justice Mosk and two other justices had dissented, on the premise that, notwithstanding the limited reach of the First Amendment under *Lloyd*, the plaintiffs had an enforceable right to leaflet and seek signatures under the more inclusive free speech provisions of article I, former section 9 (now § 2, subd. (a)) of the California Constitution. (*Diamond II*, 11 Cal.3d at pp. 340-343 [dis. opn.].)

In *Pruneyard*, the court therefore identified the issues before it as: (1) Whether *Lloyd* established federally protected property rights such "that we now are barred from ruling that the California Constitution creates broader speech rights as to private property than does the federal Constitution. (2) If not, does the California Constitution protect *speech and petitioning* at shopping centers?" (*Pruneyard*, 23 Cal.3d at p. 903; italics added.) The court answered the first question "no" and the second, "yes." It first determined that "*Lloyd* is primarily a First Amendment case" (*id.* at p. 904), and concluded that under other United States Supreme Court decisions private property remained subject to reasonable state regulation, to the end, among others, of allowing free expression. (*Id.* at pp. 905-906.)

As to the existence of California constitutional rights generally imposing such regulation, the court placed principal emphasis on the free speech

guaranties of article I, section 2.[7] The court noted that these guaranties exceed in scope those of the First Amendment, and it reviewed prior California decisions upholding rights to picket and leaflet on private property, cases which "testify to the strength of 'liberty of speech' in this state." (23 Cal.3d at p. 908.) The court also alluded to article I, section 3's separate right to petition, adding that "to prohibit expressive activity in the centers would impinge on constitutional rights beyond speech rights." (23 Cal.3d at p. 907.)

The court then summed up: "The California Constitution broadly proclaims speech and petition rights. Shopping centers to which the public is invited can provide an essential and invaluable forum for exercising *those rights*. [¶] We therefore hold that *Diamond II* must be overruled. . . . We conclude that sections 2 and 3 of article I of the California Constitution protect *speech and petitioning*, reasonably exercised, in shopping centers even when the centers are privately owned." (23 Cal.3d at p. 910; italics added.)[8]

The plain text of the Supreme Court's opinion, and the authorities on which it relied, belie appellants' contention that *Pruneyard* recognized and declared only rights involving solicitation of petition signatures. Although the factual situation the court faced involved students who sought to garner signatures for their petition, as well as to express their ideas by speaking and distributing leaflets, the court repeatedly stressed that "speech" was the primary liberty under consideration. And just as in Justice Mosk's dissent in *Diamond II*, it was article I, section 2's protection of free speech that provided the primary source for the court's analysis, and its conclusion that California liberties in this context exceed those of the First Amendment.

Further evidence, if any be needed, that the *Pruneyard* court had in mind speech and leafletting unconnected with signature gathering appears in its substantial reliance on *In re Hoffman* (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353] (per Traynor, C. J.), in which the court held that constitutional free speech rights foreclosed a trespass conviction for leafletting in a privately owned but publicly open railroad station, to protest the Vietnam war. (See *Pruneyard*, 23 Cal.3d at pp. 909-910.) That incident involved "grassroots" political education unconnected with any physical petition.

---

[7] Article I, section 2, subdivision (a) provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

Section 3 of article I further provides: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

[8] The court proceeded to observe that these rights were not unbounded but rather subject to "time, place, and manner rules." (*Ibid.*)

In short, when *Pruneyard* is read as a whole, it is inescapable that the decision does not contemplate demarcating rights to public expression—and petition—at shopping centers with a clipboard and pencil. We cannot imagine that more than a few lines in the decision would have been different had the plaintiffs sought to distribute leaflets exhorting shoppers to write or telephone the White House themselves, or to vote for a hypothetically pending ballot initiative opposing the United Nations policy—or, preliminarily, to consider the issues. These are the very types of urgings contained in plaintiffs' literature, attached to the complaint.

Other courts have readily construed *Pruneyard* as signifying rights to speech independent of physical petitioning, not the least being the United States Supreme Court, in its opinion affirming *Pruneyard*. (*Pruneyard II*, 447 U.S. at p. 88 [64 L.Ed.2d at p. 756] ["We conclude that neither appellants' federally recognized property rights nor their First Amendment rights have been infringed by the California Supreme Court's decision recognizing a right of appellees to exercise state-protected rights of expression and petition on appellants' property"].)[9] Later, in a case in which appellant Hahn Inc. was also an appellant, "appellants d[id] not challenge," and the First Appellate District expressly affirmed, "that the distribution of literature concerning a labor dispute in a privately owned shopping center . . . . , reasonably conducted, constitutes speech protected by article I, section 2, of the California Constitution pursuant to [*Pruneyard*]." (*Northern California Newspaper Organizing Com.* v. *Solano Associates* (1987) 193 Cal.App.3d 1644, 1647 [239 Cal.Rptr. 227] (dictum).)

The cases appellants urge to the contrary are wide of the mark. Two of them involved application of other states' constitutions. In *Batchelder* v. *Allied Stores Intern., Inc.* (1983) 388 Mass. 83 [445 N.E.2d 590, 38 A.L.R.4th 1206], the court upheld a candidate's right to circulate his qualifying petition at a shopping center, but rested its decision entirely on the state provision for freedom of elections, stating, "we leave to another day the question of rights that may arise under art. 16 (free speech)." (445 N.E.2d at p. 595.) In *Southcenter* v. *National Dem. Policy Com.* (1989) 113 Wash.2d 413 [780 P.2d 1282], which did reject a claim of right to leaflet and solicit contributions at a shopping center, the court construed its state's free

---

[9] See also *id.* at page 83 [64 L.Ed.2d at page 753] ("the requirement that appellants permit appellees to exercise state-protected rights of free expression and petition on shopping center property clearly does not amount to an unconstitutional infringement of appellants' property rights under the Taking Clause"); *id.* at page 85 [64 L.Ed.2d at page 754] ("Appellants have failed to provide sufficient justification for concluding that this test [reasonable regulation substantially related to public objective] is not satisfied by the State's asserted interest in promoting more expansive rights of free speech and petition than conferred by the Federal Constitution").

speech provision as subject to violation only by "state action," and expressly rejected *Pruneyard* in favor of *Lloyd, supra.*

The United State Supreme Court cases appellants rely on are also out of point. As for *Lloyd*, a principal element of *Pruneyard* was its rejection of *Lloyd* as a measure or limitation of California free speech rights; and the United State Supreme Court later unanimously agreed that *Lloyd* imposed no such restriction. (*Pruneyard II*, 447 U.S. at pp. 80-81 [64 L.Ed.2d at pp. 751-752].) Nor is there any relevance, on the present record and the present issue about the reach of *Pruneyard*, in *United States* v. *Kokinda* (1990) 497 U.S. __ [111 L.Ed.2d 571, 110 S.Ct. 3115], in which the court sustained against First Amendment challenge postal service regulations which barred in-person solicitation of funds but permitted political speech and distribution of "literature soliciting support, including money contributions." (*Id.* at p. __ [111 L.Ed.2d at p. 589] [conc. opn.].)[10]

Finally,[11] the suggestion that *Pruneyard* rights need not extend beyond petition signing because there exist other, public and private (e.g., media) forums for plaintiffs' speech and because it does not physically require in-person contact, also was implicitly if not indeed explicitly repudiated in *Pruneyard* itself. (See 23 Cal.3d at pp. 907, 910.) Moreover, plaintiffs here made a particular, unrebutted showing of the vitality and utility to them of appearing at the Mall.

We therefore hold, independently and as a matter of stare decisis (cf. *United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 834-835 [209 Cal.Rptr. 16]), that the constitutional rights recognized by *Pruneyard* are not limited to activities involving solicitation of signatures to petitions, but extend to other exercises of free speech and petition at shopping centers. It follows the trial court did not err in enjoining appellants' restriction of these rights to petition-related activities.

*B. The "Taking" Claim.*

■ Appellants' second substantive attack on the preliminary injunction contends the requirement appellants open their shopping center properties

---

[10] Plaintiffs' prayer for *permanent* injunction seeks relief from appellants' Rule prohibiting solicitation of contributions on shopping center property. That question was not at issue on the preliminary injunction, and we express no opinion about it.

[11] Appellants' reliance on the decision of Division One of this court in *H-CHH Associates* v. *Citizens for Representative Government, supra,* 193 Cal.App.3d 1193 (involving a challenge to Hahn Management's then rules for the Plaza Pasadena), as having implicitly approved limiting *Pruneyard* rights to circulating petitions, was dubious when first advanced in the opening brief. It became positively disingenuous when appellants repeated it in their reply brief and at oral argument, without having the courtesy to acknowledge Division One had recently rejected that very contention, in a subsequent appeal in the *H-CHH* case.

to speech beyond that connected with signature gathering effects an uncompensated "taking" of property, in violation of the Fifth Amendment to the United States Constitution. We find this contention indistinguishable from one the United States Supreme Court unanimously disaffirmed in *Pruneyard II*.

On appeal from the California Supreme Court's decision in *Pruneyard*, the shopping center appellants asserted, among other things, that the Fifth Amendment barred this state's pro tanto "taking" of their right to exclude others from the center. The claim was rejected in part IV of the opinion of the court by Justice (now Chief Justice) Rehnquist, in which all members joined (J. Blackmun joining in all but one sentence) (447 U.S. at pp. 88-89 [64 L.Ed.2d at p. 757]).

Justice Rehnquist acknowledged that "there has literally been a 'taking' of that right [to exclude] to the extent that the California Supreme Court has interpreted the State Constitution to entitle its citizens to exercise free expression and petition rights on shopping center property." (447 U.S. at p. 82 [64 L.Ed.2d at pp. 752-753].) However, Justice Rehnquist concluded that the intrusion posed by *Pruneyard*'s requirements did not effect a constitutional violation: "Here the requirement that appellants permit appellees to exercise state-protected rights of free expression and petition on shopping center property clearly does not amount to an unconstitutional infringement of appellants' property rights under the Taking Clause. There is nothing to suggest that preventing appellants from prohibiting this sort of activity will unreasonably impair the value or use of their property as a shopping center. The PruneYard is a large commercial complex that covers several city blocks, contains numerous separate business establishments, and is open to the public at large. The decision of the California Supreme Court makes it clear that the PruneYard may restrict expressive activity by adopting time, place, and manner regulations that will minimize any interference with its commercial functions. Appellees were orderly, and they limited their activity to the common areas of the shopping center. In these circumstances, the fact that they may have 'physically invaded' appellants' property cannot be viewed as determinative.

". . . . . . . . . . . . . . . . . .

" . . . [A]ppellants have failed to demonstrate that the 'right to exclude others' is so essential to the use or economic value of their property that the state-authorized limitation of it amounted to a 'taking.' " (447 U. S. at pp. 83-84 [64 L.Ed.2d at pp. 753-754].)

We need add little to this careful and definitive assessment of how and why *Pruneyard*'s provision for free speech and petition rights does not work

an unconstitutional "taking" to conclude that neither does the instant, implementing injunction. Appellants primarily contend that by allowing access for speech untied to temporally limited petition drives, the injunction enforces the type of "permanent access" or "permanent physical occupation" held to be a taking in *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825, 831-832 [97 L.Ed.2d 677, 686, 107 S.Ct. 3141]. Apart from the fact that *Nollan* expressly distinguished *Pruneyard II* from such a situation (483 U.S. at p. 832, fn. 1 [97 L.Ed.2d at p. 686]), we see nothing in the preliminary injunction, or in the record, to support the claim of "permanent physical occupation." Moreover, just to be certain, both *Pruneyard* and *Pruneyard II* underscored the availability to a shopping center owner of reasonable time, place, and manner regulations to govern the exercise of the rights at issue. The present injunction does not and could not retreat from those rulings, nor do plaintiffs so contend. With the injunction's enforcement of *Pruneyard* rights thus coupled with the prospect of reasonable regulations, there is no basis for concluding appellants have suffered or will suffer any permanent physical occupation of their properties, or, for that matter, the unduly increased noise and traffic which appellants also hypothesize.[12]

## II. ISSUES AS TO THE SCOPE OF THE INJUNCTION.

### A. Vagueness.

■ As noted above (p. 552, *ante*), after an exchange of proposals the trial court enjoined appellants from barring "peaceful and orderly leafletting or speaking of non-commercial ideas, or any other form of protected political expression," within appellants' shopping centers. Focusing their fire on the term "protected political expression," appellants contend that as so worded the injunction is impermissibly vague. (Cf. *In re Berry* (1968) 68 Cal.2d 137, 155-156 [65 Cal.Rptr. 273, 436 P.2d 273]; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644, 651 [83 Cal.Rptr. 35].) We agree that the injunction must be more clearly phrased.

In the context of this injunction, the phrase "protected expression" is acutely ambiguous. Presumably "protected" means "constitutionally protected from prohibition." But, apart from the fact that this definition incorporates by reference a wide field of constitutional law, it ultimately is circular and indefinite. That is because expression that may be "protected" by one constitutional provision may not be by another (compare *Pruneyard*

---

[12] Appellants' further fear of being forced by the injunction to host dramatic, disruptive protests not only is speculative but is accounted for in our immediately following treatment of the injunction's scope.

with *Lloyd*), and expression that may be "protected" in one location may not be in another. (See, e.g., *U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157, 1164-1170 [201 Cal.Rptr. 837] [discussing and applying varying tests which permit different species of speech at different public forums]; *Prisoners Union* v. *Department of Corrections* (1982) 135 Cal.App.3d 930, 934-935 [185 Cal.Rptr. 634] [noting that although leafletting is "expression protected by the First Amendment to the United States Constitution [citations], and by article I, sections 2 and 3 of the California Constitution [citing *Pruneyard* and *In re Hoffman, supra*]," the expression allowable at a particular forum may depend upon its type].)

Ultimately, to be compatible with its own authority (*Pruneyard*), the injunction's use of "protected" would have to be read to mean "protected from prohibition at private shopping centers by article I, sections 2 and 3 of the California Constitution." But that result, although probably what the court intended, is inherently indefinite.[13]

There is another, related problem with the present injunctive language. Just as the trial court was concerned with preventing appellants from evading the constitutional commands of *Pruneyard*, correspondingly there is neither factual nor legal basis, at this stage of the action, for expanding the rights recognized by *Pruneyard* to far frontiers. But if the injunction is read, as it could be, to permit as "any . . . protected political expression" any such expression as may not be categorically banned, it would allow a spectrum of activity, ranging from flag burning to rock singing to performances of fully staged plays, never addressed by the *Pruneyard* case, and perhaps so incompatible with a shopping center as *not* to be "protected" there by the California Constitution. (Cf. *Los Angeles* v. *Preferred Communications, Inc.* (1986) 476 U.S. 488, 495 [90 L.Ed.2d 480, 487, 106 S.Ct. 2034] [" 'Even protected speech is not equally permissible in all places and at all times' "].) That such overbreadth may not have been the trial court's intention simply underscores further the uncertainty of this portion of the injunction.

This textual deficiency does not mean the injunction must be vacated. Deleting the language to which appellants have objected as uncertain will rectify that uncertainty, yet leave the order intact. At oral argument, plaintiffs acknowledged this disposition to be a viable alternative. We therefore

---

[13] Plaintiffs contend that the wording may and must be read in conjunction with certain guidelines for granting or refusing access articulated in *H-CHH Associates* v. *Citizens for Representative Government, supra*, 193 Cal.App.3d at page 1212. But there is no indication the trial court considered or intended to adopt those standards; had it meant to, it could easily have said so. Nor, of course, did plaintiffs propose them as part of the injunction.

will direct the trial court to strike the words "or any other form of protected political expression" from the preliminary injunction.

### B. Statewide Application.

■ Appellants also complain of the trial court's extending its preliminary injunction against their limitation of *Pruneyard* activities to all California shopping centers owned, managed or controlled by appellants. We believe this portion of the injunction was a proper exercise of discretion in light of the evidence.

The trial court had before it uncontradicted oral and documentary evidence that the Rules, including the presently challenged restriction to physical petitioning, had been promulgated for, and were operative in, not only the Mall but also other California shopping centers managed, and to some extent owned, by appellants Hahn Management and Hahn Inc.[14] Also uncontradicted were various incidents and occasions on which the limitation at issue had been enforced, at centers other than the Mall, to exclude political leafletting. Finally appellants' resolve to pursue the unconstitutional restraint was manifest in their Policy and memorandum (see p. 551, *ante.*)

On this showing, the court acted well within its discretion (*Allied Artists Pictures Corp.* v. *Friedman* (1977) 68 Cal.App.3d 127, 136-137 [137 Cal.Rptr. 94]) in enjoining appellants from enforcing their uniform and categorical restriction at shopping centers throughout the state. Not only did this disposition avert the wastefulness of additional judicial proceedings that would only have produced the same result (see Code Civ. Proc., § 526, subd. 6), it appropriately provided complete interim relief from the extensive threatened infringement of California constitutional rights the evidence disclosed.

Appellants' principal objection to this element of the injunction refers to the alleged diversity of their shopping centers in size and structure, and relies on the notion that the type and degree of constitutionally required free speech at a particular forum may vary with the forum's own attributes. (Cf. *U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory, supra,* 154 Cal.App.3d at pp. 1164-1170.) But this general principle does not aid appellants on the issue before us. *Pruneyard* has already established, as the constitutional law of this state, that shopping centers in general are appropriate forums for peaceful, orderly speech and leafletting

---

[14] The sole exception identified was the Plaza Pasadena, wherein similar rules have for some time been under contest in the *H-CHH Associates* litigation.

unconnected to enrollment of signatures on petitions. (*Pruneyard*, 23 Cal.3d at pp. 910-911; see *id.* at p. 907.) Although different time, place, and manner regulations may be appropriate for distinguishably different shopping centers, appellants' content-based distinction between pencil-in-hand petitioning and other orderly intercourse is not such a regulation. Further, even if so labelled, it would not appear to be justified by any rational administrative purpose, other than a restriction of access that we have determined is impermissible. Whatever other distinctions may properly be made among shopping centers, appellants cannot claim the right to practice in California the violation of *Pruneyard* rights identified and enjoined here.

Appellants also contend that the scope of the injunction improperly exceeds plaintiffs' complaint, which prayed for relief only as to the Mall. But given the evidence plaintiffs adduced, their failure formally to amend their complaint to conform to proof is not a defect of substance. The relief granted was sufficiently consistent with the pleadings and issues to be procedurally permissible. (*Berkeley Lawn Bowling Club* v. *City of Berkeley* (1974) 42 Cal.App.3d 280, 291 [116 Cal.Rptr. 762] [injunction exceeding prayer of complaint proper because consistent with the evidence and issues].)

*C. The Cleaning Deposit.*

■ Appellants' final contention concerns the trial court's limitation to $50 of the cleaning deposit appellants may require of persons who propose to distribute political leaflets. Relying on the holding in *H-CHH Associates* v. *Citizens for Representative Government, supra*, 193 Cal.App.3d at page 1212, that such deposits may be required so long as they "bea[r] a reasonable relationship to the costs likely to be incurred," appellants contend that the evidence established their $75 deposit met that standard.

The record does not sustain this contention. Appellants reason that based on their evidence of the time and labor costs required to police the entire Mall, "the $75.00 deposit is consumed in less than a week." But there was no predicate evidence (a) that plaintiffs or any other groups were seeking to distribute leaflets for an entire week; (b) that retrieving discarded leaflets would require the work of an entire custodial officer circling the entire Mall, in addition to his or her normal sanitation duties; or (c) that appellants had ever experienced abnormal litter conditions from leafletting, requiring they incur *any* extraordinary costs.

Based on this record, the court was initially disposed to enjoin appellants from requiring any deposit, absent "a demonstration of the necessity." The court retreated to allowing a $50 deposit only when confronted by appellants' counsel with the *H-CHH Associates* court's conclusion that $50 was

"little more than de minimis" and apparently not excessive in that case. (193 Cal.App.3d at p. 1212.) It thus appears that the $50 figure originated with appellants, and is more for plaintiffs than for them to complain about. In any event, given the evidence indicating a lack of necessity for a $75 deposit, appellants cannot establish that the court in any way abused its discretion by temporarily awarding them the right to charge two-thirds that.

## DISPOSITION

The order granting the preliminary injunction is affirmed. The matter is remanded with directions to modify the preliminary injunction by striking the words "or any other form of protected political expression" from paragraph 1, lines 11-12 thereof. Plaintiffs shall recover their costs.

Roth, P. J., and Gates, J., concurred.