Duffly, J.
Steven M. Glovsky sought to solicit signatures for his nomination to public office outside the entrance to a supermarket owned by the defendant, Roche Bros. Supermarkets, Inc. (Roche Bros.), but was informed that Roche Bros, prohibited this activity on its property. Glovsky filed suit in the Superior Court claiming that Roche Bros, had violated his right to equal ballot access under art. 9 of the Massachusetts Declaration of Rights. He requested relief under the Massachusetts Civil Rights Act, G. L. c. 12, § 111 (act), for a violation of his rights “by threats, intimidation or coercion.”[2] Roche Bros.’ motion to dismiss pursuant to Mass. R. Civ. R 12 (b) (6), 365 Mass. 754 (1974), was allowed. Glovsky appealed, and we granted his application for direct appellate review. We conclude that Glovsky adequately has alleged a right under art. 9 to solicit nominating signatures outside Roche Bros.’ supermarket, but that Roche Bros, did not violate this right “by threats, intimidation or coercion.”[3]
Background. The complaint sets forth the following allegations. In early 2012, Glovsky undertook a bid for election to the second district seat on the Governor’s Council. To place his name on the September 6, 2012, State primary ballot, Glovsky needed to submit, by May 29, 2012, nomination papers containing at *754 least 1,000 certified names. On February 7, 2012, Glovsky obtained nomination papers from the office of the Secretary of the Commonwealth and began collecting signatures.
On the afternoon of March 14, 2012, Glovsky traveled to a location in Westwood, near the geographic center of the Governor’s Council second district, intending to solicit signatures on Roche Bros.’ property there. Roche Bros.’ Westwood property consists of 4.99 acres and contains a 47,568 square foot supermarket building. As alleged in the complaint, Roche Bros.’ Web site describes its Westwood supermarket as “the first to incorporate a ‘department’ concept of merchandising, adding a bakery, florist, and a restaurant to make shopping more enjoyable.” The store is the only supermarket in Westwood, which, as of July, 2009, reported a population of 14,330. Roche Bros, also leases space inside the building to a banking institution, which operates a “full service banking” branch there. The bank has its own separate business logo displayed on the building’s marquee, and maintains a twenty-four hour deposit slot in the building’s exterior wall.
Upon arriving at the Westwood property, Glovsky notified Roche Bros, personnel that he intended to solicit nominating signatures from voters on the sidewalk immediately outside the entrance to the store. Jim Visconti, the store manager, informed Glovsky that Roche Bros, had adopted a policy that “no longer” permitted signature solicitation anywhere on its Westwood property. Glovsky’s complaint alleges that he felt “intimidated” by this delivery of Roche Bros.’ policy and “threatened by the inherent consequences he understood could result if he acted against such a clearly stated prohibition.” As a result, Glovsky left the property despite believing that he had a right under art. 9 to solicit signatures there.
Discussion, a. Standard of review. “We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff’s favor.” Harrington v. Costello, 467 Mass. 720, 724 (2014). To survive a motion to dismiss, these allegations must “plausibly suggest” an entitlement to relief, raising the right to relief “above the speculative level.” Id., quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
b. Article 9. Glovsky argues that he has a protected right under art. 9 to solicit signatures in support of his nomination to public office on the property of the Roche Bros, supermarket in Westwood. Article 9 provides that “[a]ll elections ought to be *755 free; and all the inhabitants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments.” This provision protects the “fundamental right” of equal access to the ballot, a “basic right,” Opinion of the Justices, 413 Mass. 1201, 1210 (1992), that is “of fundamental importance in our form of government because through the ballot the people can control their government.” Batchelder v. Allied Stores Int'l, Inc., 388 Mass. 83, 91, 93 (1983) (Batchelder I). See Libertarian Ass’n of Mass. v. Secretary of the Commonwealth, 462 Mass. 538, 560 (2012) (art. 9 protects “fundamental” and “intertwine[d]” rights of candidates to participate equally in electoral process and of voters to cast their ballots as they see fit). This right of ballot access encompasses an individual’s right to solicit signatures in support of a candidate’s nomination to public office. See Batchelder I, supra at 84, 92. Significantly, art. 9 does not require State action. See Libertarian Ass’n of Mass. v. Secretary of the Commonwealth, supra at 558; Batchelder I, supra at 88.
In Batchelder I, supra at 84, we held that art. 9 protects the right to solicit nominating signatures in the common areas of a private shopping mall or shopping center, despite the property owner’s objection. The present case requires us to consider whether art. 9 extends the right to solicit nominating signatures to private property like that of Roche Bros.’ Westwood supermarket, which is not alleged to be a shopping mall or shopping center. As in Batchelder I, supra at 91, “[w]e are concerned with ballot access and not with any claim of a right to exercise free speech apart from the question of ballot access.” As we noted in that case, “[t]he difference between free speech and art. 9 rights to free elections and to be a candidate equally with others is not purely theoretical.” Id. at 92.[4]
In determining that the plaintiff in Batchelder I had a right to solicit nominating signatures in a shopping mail’s common areas, we balanced his need to solicit signatures on the property in order to effectuate his right to equal ballot access against the burden that such conduct would impose on the mall owner’s property *756 interests. See id. at 91-93. First, we emphasized that the art. 9 right to solicit signatures, unlike the broader right to free speech protected by art. 16, requires personal contact with voters and cannot be effectuated through other means of communication. Id. at 91-92. Because of the growing importance of shopping malls in retail merchandising, they had begun to function “much as the ‘downtown’ area of a municipality did in earlier years,” and the shopping center at issue represented the “most favorable” area in the district for seeking signatures. Id. at 92-93. Accordingly, prohibiting the plaintiff’s access would have “substantially impaired” his art. 9 right. Id. at 93.
Second, the plaintiff sought only to engage in “unobtrusive and reasonable solicitations in the common areas of the mall,” not in the stores themselves, so that his activity would not unduly burden the mall owner’s property interests; indeed, those common areas “ha[d] been dedicated to the public as a practical matter” based on the mall owner’s use of the property to host frequent civic, charitable, and other events in order to attract customers and generate good will. See id. at 92, 93 n.12. Nor had the mall owner shown that requiring it to permit access by those soliciting nominating signatures would infringe its own constitutional property or speech rights, either by adversely affecting its economic interests or by forcing it to associate with the plaintiff’s views. Id. at 93. The mall owner adequately could protect its interests by adopting reasonable time, place, and manner restrictions to minimize the burden that signature solicitation placed on it. Id. at 84, 93.[5]
*757 Roche Bros, seeks to limit the exercise of the art. 9 right to the common areas of a large shopping mall, thereby creating a bright-line distinction between such common areas and the area immediately outside the entrance to a supermarket. Pointing to our observations in Batchelder I, supra at 92, that shopping malls had begun to “function in many parts of this State much as the ‘downtown’ area of a municipality did in earlier years” and that the common areas of the mall in question “ha[d] been dedicated to the public as a practical matter,” Roche Bros, argues that art. 9 protects solicitation of nominating signatures only on private property that serves as the functional equivalent of a traditional public forum. Citing cases from California and other jurisdictions, Roche Bros, contends that the private property located at the entrance to a freestanding retail establishment, such as the supermarket here, does not meet this test because the owner of such property has invited the public only to pass through the area in entering or exiting the store, not to congregate there.[6]
Roche Bros, misreads our opinion in Batchelder I. Functional equivalence to a traditional public forum is not the test for determining whether art. 9 protects signature solicitation on private property. For example, in Commonwealth v. Hood, 389 Mass. 581, 585-587 (1983), we distinguished Batchelder I based on the different right at stake and the different property in question, and only separately and for purposes of addressing a claimed right under the First Amendment to the United States Constitution did we discuss whether the property served “a public function” or *758 had been “dedicated to certain types of public use” (citation omitted). Id. at 587. Rather, the extent to which private property serves the role of a traditional public forum or effectively has been dedicated to the public is relevant in the context of art. 9 only as a factor in balancing the interests of the individual soliciting signatures against those of the property owner.[7]
In many rural and suburban communities, the local supermarket may serve as one of the few places in which an individual soliciting signatures would be able to approach members of the public in large numbers. We disagree with Roche Bros.’ contention that, for purposes of a claim to ballot access under art. 9, the privately owned area immediately outside the entrance to such a supermarket differs as a matter of kind from the common areas of a shopping mall or shopping center so as to warrant dismissal of Glovsky’s claim pursuant to Mass. R. Civ. P. 12 (b) (6).[8] Applying the balancing test employed in Batchelder I to the facts as asserted in Glovsky’s complaint, we conclude that Glovsky adequately has alleged a right under art. 9 to solicit nominating signatures on the private property outside the entrance to Roche Bros.’ Westwood supermarket.
Glovsky has alleged a substantial interest in soliciting signatures in this area for his nomination to public office. He “cannot reasonably obtain” such signatures other than by “personal contact with voters,” Batchelder I, supra at 92, and “[f]rom the standpoint of a signature gatherer . . . there could hardly be a more ideal or efficient spot to conduct one’s business than the single entrance and exit of a [supermarket or giant] grocery store.” Waremart, Inc. v. Progressive Campaigns, Inc., 139 Wash. 2d 623, 649 (1999) (Madsen, J., concurring). In general, super *759 markets offer a variety of groceries, household items, and other merchandise that in many communities would be dispersed among several shops along a public way. See, e.g., Colgate-Palmolive Co. v. Elm Farm Foods Co., 337 Mass. 221, 223 (1958) (supermarkets commonly sell “meats, groceries, vegetables, toilet articles, household wares, and other merchandise”). In addition to such items, the Westwood property includes a bakery, a florist, and a restaurant. It also accommodates a “full service banking” branch. Because the property allegedly contains the only supermarket in West-wood, as well as these other amenities, it reasonably can be inferred that the property draws a significant portion of the town’s voters. In some communities, an individual might solicit signatures from members of the public as they traverse the public way connecting the various shops that offer such amenities; to deprive Glovsky of similar access to the public where the assorted products have been consolidated under a single roof could “substantially impair[ ]” the fundamental rights protected by art. 9. See Batchelder I, supra at 93.
Moreover, the allegations in the complaint support the reasonable inference that allowing individuals to solicit nominating signatures in the area outside the Westwood supermarket building would not unduly burden Roche Bros.’ property interests. Roche Bros, invites the public at large to shop at its property and offers numerous amenities to attract a significant number of people with diverse needs and interests. Furthermore, as the only supermarket in Westwood and especially given the other features it offers, it is likely that the property does draw large numbers of people on a daily basis.[9] Like the plaintiff in Batchelder I, supra at 92, Glovsky seeks only the right to engage in “unobtrusive and reasonable solicitations” outside the store entrance. Nothing in the undeveloped record before us suggests that the proposed, presumably brief, interactions with shoppers as they enter or leave the supermarket would interfere with Roche Bros.’ use of *760 its property.[10]
Roche Bros, argues that, as compared to the common areas of a shopping mall, requiring it to permit signature solicitation outside its entrance would impose an undue burden because the close proximity to its free-standing establishment would create greater risks both that Roche Bros, will be seen as indorsing the potential political candidate in question and that its patrons will be unable to avoid the solicitations as they enter or leave the supermarket. Without further evidentiary support, however, these hypothetical risks do not outweigh the interest of an individual seeking nominating signatures in accessing the property. It cannot be assumed at this stage of the proceeding that Roche Bros, would be identified with the views expressed by a person soliciting nominating signatures merely because the person does so on premises owned by Roche Bros, but open to the general public. See Batchelder I, supra at 93. See also PruneYard Shopping Ctr. v. Robins, 447 U.S. 74, 87 (1980) (PruneYard). For example, Roche Bros, could post signs in the area disavowing any association with potential political candidates. See PruneYard, supra. Additionally, Roche Bros, could prevent those soliciting signatures from harassing its patrons and impairing its commercial interests by prescribing reasonable restrictions on the location, time, and manner in which the nominating signatures may be sought. See Batchelder I, supra at 84, 93. See also PruneYard, supra at 83.[11]
We are not persuaded by the California cases on which Roche Bros, relies for the proposition that a State constitutional right to engage in expressive activity in the common areas of a shopping mall should not extend to the area outside a supermarket.[12] See note 6, supra. California decisional law recognizes an expansive *761 right to engage in free speech on certain private property that is broader than the limited art. 9 right to solicit nominating signatures that we have recognized thus far. See Fashion Valley Mall, LLC v. National Labor Relations Bd., 42 Cal. 4th 850, 869-870 (2007), citing Cal. Const., art. I, § 2. Although the California Supreme Court has identified the State’s constitutional provision addressing the right to petition the government as an additional ground for protecting the solicitation of petition signatures on certain private property, see Robins v. Pruneyard Shopping Ctr., 23 Cal. 3d 899, 910 (1979), aff’d, PruneYard, supra, citing Cal. Const., art. I, §§ 2, 3, the California courts have not interpreted this provision as extending the right to solicit signatures beyond the protection afforded by California’s free speech clause. See Albertson’s, Inc. v. Young, 107 Cal. App. 4th 106, 122 (2003) (“To establish a right to solicit signatures at the entrance to a specific store, it must be shown that the particular location is impressed with the character of a traditional public forum for purposes of free speech”); Westside Sane/Freeze v. Ernest W. Hahn, Inc., 224 Cal. App. 3d 546, 554 (1990) (California’s free speech clause provides “primary source” for right to solicit signatures identified in Robins v. Pruneyard Shopping Ctr., supra). Accordingly, recognition by the California courts of an individual’s right to solicit signatures on private property would open the property to a host of “other forms of expressive activity” and thereby impose a greater burden on the property owner than we so far have recognized under the Massachusetts Declaration of Rights. See Albertson’s, Inc. v. Young, supra at 128-129.
Furthermore, in concluding that the balance of interests weighs in favor of the supermarket owner, the California cases rely on the fact that such an owner has invited the public only to pass through the area outside the store’s entrance, not to congregate there. See Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8, 55 Cal. 4th 1083, 1092-1093 (2012), cert. denied, 133 S. Ct. 2799 (2013); Albertson’s, Inc. v. Young, 107 Cal. App. 4th at 120-122; Trader Joe’s Co. v. Progressive Campaigns, Inc., 73 Cal. App. 4th 425, 433-434 (1999). For purposes of art. 9, however, this consideration carries little weight in balancing the *762 interests presented. In Batchelder I, supra at 92, when comparing shopping malls to the “downtown” area of a municipality, we focused on the malls as an attraction for retail shopping, not on whether people congregate in particular parts of the malls. In terms of access to the public, it matters little to a signature gatherer whether people congregate in an area or merely pass through. Likewise, although signature solicitation might intrude less on a property owner’s interests if the owner already permits people to congregate on the property to engage in political and expressive activities, see id. at 93 n.12, that does not imply that such solicitation necessarily would burden the interests of any other property owner. As discussed, nothing in the record suggests that unobtrusive signature solicitation, subject to such reasonable restrictions as Roche Bros, may prescribe, would impair Roche Bros.’ commercial interests.
We conclude that Glovsky plausibly has alleged a right under art. 9 to solicit nominating signatures on the private property outside Roche Bros.’ Westwood supermarket. We now turn to whether Glovsky may seek relief under the Massachusetts Civil Rights Act for Roche Bros.’ alleged violation of this right.
c. Massachusetts Civil Rights Act. “Not every violation of law is a violation of the [Massachusetts Civil Rights Act].” Brunette v. Lynn Pub. Sch., 433 Mass. 179, 182 (2001), quoting Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989). To establish a claim under the act, “a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.” Currier v. National Bd. of Med. Examiners, 462 Mass. 1, 12 (2012). See G. L. c. 12, § 11I; G. L. c. 12, § 11H. The Legislature “explicitly limited the [act’s] remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion” in order to prevent it from establishing a “vast constitutional tort.”[13] Currier v. National Bd. of Med. Examiners, supra, quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 645, 646 (2003). See Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989).
For purposes of the act, we define “threats, intimidation or *763 coercion” as follows: a “threat” consists of “the intentional exertion of pressure to make another fearful or apprehensive of injury or harm”; “intimidation” involves “putting in fear for the purpose of compelling or deterring conduct”; and “coercion” is “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Haufler v. Zotos, 446 Mass. 489, 505 (2006), quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994), and Buster v. George W. Moore, Inc., 438 Mass. at 646. We employ a reasonable person standard in determining whether a defendant’s conduct constitutes such threats, intimidation, or coercion. Haufler v. Zotos, supra. A claim under the act is properly dismissed where the allegations in the plaintiff’s complaint fail to satisfy this standard. See, e.g., Brum v. Dartmouth, 428 Mass. 684, 708 (1999).
Glovsky argues that Roche Bros, interfered with his art. 9 right “by threats, intimidation or coercion” when Visconti, Roche Bros.’ store manager, informed him that Roche Bros, had adopted a policy against signature solicitation, causing Glovsky to feel “intimidated” and “threatened” such that he vacated the premises. Glovsky relies on Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985) (Batchelder II), where we held that a mall security officer’s order that the plaintiff stop soliciting signatures involved sufficient intimidation or coercion to support a claim under the act.
Batchelder II, supra at 823, however, turned on the threat of immediate arrest or forcible ejection implicit within an “order[ ]” from a “uniformed security officer.” See Longval v. Commissioner of Correction, 404 Mass. at 333; Bally v. Northeastern Univ., 403 Mass. at 719. See also Brunelle v. Lynn Pub. Sch., 433 Mass. at 184, quoting Reproductive Rights Network v. President of the Univ. of Mass., 45 Mass. App. Ct. 495, 508 (1998) (distinguishing Batchelder II based on security officer’s “heavy-handed use of police power”). Glovsky does not allege that Visconti threatened physically to remove him from the premises or to have him arrested, contrast Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 92 (1999), and as a private citizen without any apparent police power, Visconti’s statement that Roche Bros, prohibits signature solicitation on its property does not bear the same coercive force as a similar statement from a security officer. See Kennie v. Natural Resource Dep’t of Dennis, 451 *764 Mass. 754, 763-765 (2008); Brunette v. Lynn Pub. Sch., supra.[14]
Glovsky contends that Visconti’s statement carried an implicit threat of arrest pursuant to G. L. c. 266, § 120, which provides: “Whoever, without right enters or remains in or upon the . . . improved or enclosed land ... of another . . . after having been forbidden so to do by the person who has lawful control of said premises . . . may be arrested by a sheriff, deputy sheriff, constable or police officer.” Without further indication, however, that Visconti would seek Glovsky’s arrest, or cause him to suffer other serious adverse consequences, his mere declaration of Roche Bros.’ policy against signature solicitation does not rise to the level of threats, intimidation, or coercion. See Kennie v. Natural Resource Dep’t of Dennis, 451 Mass. at 765, quoting Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 761 (2002) (Rapoza, J., dissenting) (limited “verbal ‘posturing’ and ‘[hjuffing and puffing’ ” do not constitute threats, intimidation, or coercion where such statements are both delivered by private party and unaccompanied by further actions); Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. at 476 n.9 (lecturing, counselling, and picketing against abortion do not interfere with that right through threats, intimidation, or coercion); Rodriques v. Furtado, 410 Mass. 878, 881, 889 (1991) (hospital agent’s explanation to doctor of hospital’s policies, leading doctor to violate plaintiff’s rights in accordance with those policies, did not establish hospital’s interference with plaintiff’s rights by threats, intimidation, or coercion). See also Chao v. Ballista, 772 F. Supp. 2d 337, 360 (D. Mass. 2011) (knowledge of defendant’s troublesome policy does not constitute “indirect threat” amounting to threats, intimidation, or coercion); Walsh v. Lakeville, 431 F. Supp. 2d 134, 150 (D. Mass. 2006) (“[mjerely recommending” interference with right “doesn’t evince the requisite threats, intimidation or coercion”). That Glovsky subjectively may have felt “threatened” or “intimidated” does not suffice. See Meuser v. Federal Express Corp., 564 F.3d 507, 520 (1st Cir. 2009); Planned Parenthood League of Mass., Inc. v. Blake, supra at 474-475, quoting Commonwealth v. DeVincent, 358 Mass. 592, 595 (1971). Accordingly, Glovsky’s *765 civil rights claim properly was dismissed.[15]
Conclusion. That portion of the judgment dismissing Glovsky’s request for declaratory relief under art. 9 is vacated and set aside. The remainder of the judgment is affirmed. The matter is remanded to the Superior Court for entry of a judgment dismissing the request for declaratory relief as moot.

So ordered.

General Laws c. 12, § 111, provides that
“[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief . . . .”
General Laws c. 12, § 11H, applies
“[wjhenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth . . . .”

We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts in support of the plaintiff, and the amicus brief submitted by New England Legal Foundation; Associated Industries of Massachusetts; the Greater Boston Real Estate Board; the Massachusetts Food Association, NAIOP Massachusetts; the Real Estate Bar Association for Massachusetts, Inc.; and the Abstract Club in support of the defendants.

In addition to practical differences between the exercise of these rights, art. 16 of the Massachusetts Declaration of Rights, which protects free speech, may contain a State action requirement. See Roman v. Trustees of Tufts College, 461 Mass. 707, 713 (2012) (leaving open whether art. 16 extends to private property).

We have not had occasion since Batchelder v. Allied Stores Int’l, Inc., 388 Mass. 83 (1983) (Batchelder I), to address the scope of the ballot access right in art. 9 of the Massachusetts Declaration of Rights. Our subsequent discussion of Batchelder I in cases dealing with free speech rights under art. 16, however, provides guidance as to the factors that might be considered when weighing any limitations on the art. 9 right. As these cases suggest, the balance of interests between an individual soliciting nominating signatures and the owner of private property would come out differently if the property owner has not opened the premises to the public for the owner’s own commercial benefit. See Commonwealth v. Hood, 389 Mass. 581, 585-586 (1983) (Batchelder I distinguished where case involved art. 16 rights, and private technology laboratory did not open its property for its commercial benefit, although it did permit public to pass through property’s outdoor area). Likewise, the balance would come out differently if the property is devoted to activities involving a small or narrow group of clientele or a special expectation of privacy. See Ingram v. Problem Pregnancy of Worcester, Inc., 396 Mass. 720, 722-723 (1986) (Batchelder I distinguished where case involved art. 16 rights, and private property at issue *757 consisted of interior corridors of office building that housed reproductive health care clinic). See also Batchelder I, supra at 89 n.8 (distinguishing parking lot of private hospital). Cf. PruneYard Shopping Ctr. v. Robins, 447 U.S. 74, 78 (1980), quoting Robins v. Pruneyard Shopping Ctr., 23 Cal. 3d 899, 910 (1979) (distinguishing “modest retail establishment”). Here, by contrast, the property at issue is a large, private supermarket to which members of the general public are invited and which offers numerous amenities to attract a significant number of people with diverse needs and interests. Cf. Marsh v. Alabama, 326 U.S. 501, 506 (1946) (“The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it”).

See, e.g., Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8, 55 Cal. 4th 1083, 1092-1093 (2012), cert. denied, 133 S. Ct. 2799 (2013); Van v. Target Corp., 155 Cal. App. 4th 1375, 1388-1389 (2007); Albertson’s, Inc. v. Young, 107 Cal. App. 4th 106, 120-122 (2003); Costco Cos. v. Gallant, 96 Cal. App. 4th 740, 755 (2002); Trader Joe’s Co. v. Progressive Campaigns, Inc., 73 Cal. App. 4th 425, 433-434 (1999); Waremart, Inc. v. Progressive Campaigns, Inc., 139 Wash. 2d 623, 636-637 (1999).

Indeed, private property’s function as a traditional public forum serves as the test for State action in this context. See, e.g., Central Hardware Co. v. National Labor Relations Bd., 407 U.S. 539, 547 (1972) (for conduct of private property owner to qualify as State action, “the privately owned property must assume to some significant degree the functional attributes of public property devoted to public use”). Accordingly, the strict functional equivalency test urged by Roche Bros, effectively would impose the type of State action requirement that Batchelder I, supra at 88, expressly rejected. Instead, art. 9 demands a more pragmatic and flexible view of the extent to which private property serves the public in the manner of a traditional public forum such that excluding signature solicitors from that property would undermine the right to equal ballot access. See Batchelder I, supra at 88-89, 92-93.

As Roche Bros, concedes, none of the out-of-State cases on which it relies was decided in the context of a motion to dismiss.

Contrary to the dissent’s assertion, see post at 772 & n.7, we do not suggest that the art. 9 right to solicit nominating signatures extends to small-scale general stores just because they offer a variety of goods. See note 4, supra. Such small-scale stores attract fewer customers than does a supermarket of the type at issue here, thereby both diminishing an individual’s need to solicit signatures there and increasing the relative burden that such solicitation places on the property owner. Furthermore, many of these small-scale stores abut public walkways, so that individuals soliciting signatures would have access to the store’s customers without entering the private property.

The statement attributed to Roche Bros.’ store manager that Roche Bros, “no longer” permits signature solicitation on the Westwood property implies that Roche Bros, previously did permit such solicitation.

The dissent concludes that Roche Bros.’ concerns about indorsement and interference outweigh Glovsky’s admittedly strong interest in soliciting signatures because such solicitation “may” negatively impact Roche Bros. See post at 774-775. At this stage of the proceeding, our obligation under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), is to “accept[ ] the allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff’s favor.” Harrington v. Costello, 467 Mass. 720, 724 (2014).

Although our decision in Batchelder I favorably cited California precedent, California case law at the time apparently extended its State constitutional free expression right to the area outside a supermarket. See Robins v. Pruneyard Shopping Ctr., 23 Cal. 3d 899, 908-909 (1979), citing In re Lane, 71 Cal. 2d *761 872, 878 (1969). See also National Labor Relations Bd. v. Calkins, 187 F.3d 1080, 1090-1092 (9th Cir. 1999), cert. denied, 529 U.S. 1098 (2000); Press v. Lucky Stores, Inc., 34 Cal. 3d 311, 316, 318 (1983); Bank of Stockton v. Church of Soldiers of the Cross of Christ of Cal., 44 Cal. App. 4th 1623, 1630-1631 (1996).

Because she concluded that Glovsky had no right under art. 9 to solicit nominating signatures on Roche Bros.’ property, the judge did not address whether Roche Bros, violated this right “by threats, intimidation or coercion.” Nevertheless, both parties have briefed this issue on appeal.

We need not here decide whether to revisit the conclusion in Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985), that the mere notification from a security officer of the property owners’ good-faith policy against signature solicitation qualifies as intimidating or coercive under the Massachusetts Civil Rights Act.

This conclusion ordinarily would not preclude Glovsky from seeking declaratory relief under art. 9. See Batchelder I, supra at 84 n.2. See also Longval v. Commissioner of Correction, 404 Mass. 325, 332-333 (1989). However, as the deadline for collecting nominating signatures and the election for which Glovsky sought ballot access have both passed, the case is now moot, and we therefore do not remand for further proceedings. See Commonwealth v. Hanson H., 464 Mass. 807, 817 (2013); Tsongas v. Secretary of the Commonwealth, 362 Mass. 708, 720-721 (1972).