MANSFIELD, Justice.
After receiving citizen complaints about the operation of an ATV within city limits, police officers reviewed a video of the event, examined the city's ordinances, and concluded an ordinance had been violated. They sought and obtained an arrest warrant from a magistrate and arrested the ATV operator. An Iowa district court later dismissed the criminal case against the operator, however, finding that no ordinance actually prohibited his conduct.
Thereafter, the ATV operator brought damages claims against the city and the police officers for common-law false arrest, deprivation of civil rights under 42 U.S.C. § 1983 (2012) based on a violation of the Fourth Amendment, and directly under article I, sections 1 and 8 of the Iowa Constitution. The case was removed to federal court, where the federal district court granted summary judgment to the defendants on the common law and federal constitutional claims. The federal district court reasoned that the police officers were acting pursuant to a facially valid warrant, and it was not clearly established that the ATV operator's conduct did not violate an ordinance.
We have now been asked by the federal district court to answer the following certified question of Iowa law relating to the Iowa constitutional claims: "Can a defendant raise a defense of qualified immunity to an individual's claim for damages for violation of article I, § 1 and § 8 of the Iowa Constitution ?"
For the reasons discussed herein, we answer this question as follows: A defendant who pleads and proves as an affirmative defense that he or she exercised all due care to conform with the requirements *261 of the law is entitled to qualified immunity on an individual's claim for damages for violation of article I, sections 1 and 8 of the Iowa Constitution.
I. Background Facts and Proceedings.
When we answer a certified question, we rely upon the facts provided with the certified question. See Bd. of Water Works Trs. of Des Moines v. Sac Cty. Bd. of Supervisors , 890 N.W.2d 50, 53 (Iowa 2017) ; Life Inv'rs Ins. Co. of Am. v. Estate of Corrado , 838 N.W.2d 640, 643 (Iowa 2013). Accordingly, we restate the facts as set forth by the federal district court:
The incidents giving rise to Baldwin's claims began on Sunday, November 10, 2013. At approximately 2:30 p.m. that day, Officers Reineke and Hellickson were on patrol in the City when they received a dispatch to report to the Law Enforcement Center concerning a "4 wheeler complaint." They drove to the Law Enforcement Center. Upon their arrival, they spoke with Tenner and Patti Lilland, who live in the Estherville area. Mr. Lilland showed the officers a video of a 4-wheeler riding in the ditch on the south side of North 4th Street. The officers were able to identify the driver of the ATV as Greg Baldwin. They watched the ATV proceed along North 4th Street and turn into a ditch, using the north Joe Hoye Park entrance, after which it continued in the ditch until it reached West 14th Avenue North, where it returned to the roadway. Baldwin acknowledges that he was operating his ATV/UTV on that date in the south ditch of North 4th Street and on North 4th Street, and the parties agree that the ditch and street are within the City's limits. Baldwin does not recall using the north Joe Hoye Park entrance to enter the ditch.
Officers Reineke and Hellickson reviewed Iowa Code Ch. 321I, because the City did not reproduce Chapter 321 in printed form, only incorporated it by reference, when that chapter was adopted into the City Code of Ordinances. Officer Reineke then reviewed The Handbook of Iowa All-Terrain Vehicle and Off-Highway Motorcycle Regulations (Handbook ), which the defendants contend is a handbook frequently relied upon by police officers when determining whether off road vehicles are operating in compliance with applicable laws. Baldwin denies, for lack of knowledge, the assertion that police officers rely on the Handbook , and denies that it addresses the applicable laws of the City. Based upon their reading of the State Code and the information contained in the video provided by the Lillands, Officers Reineke and Hellickson concluded that there had been a violation of what they believed was City Ordinance E-321I.10 (operating on highways). Before issuing a citation, however, Officer Reineke conferred with his supervisor, Captain (now Chief) Brent Shatto, and (then) Chief Eric Milburn. Captain Shatto and Chief Milburn agreed that they believed that the activity shown on the video amounted to a violation of the local ordinance. The parties now agree, however, that City Ordinance E-321I.10 was not a valid ordinance in effect at the time that Baldwin operated his ATV/UTV on November 10, 2013, because it did not exist at that time, and it still is not part of the City's Code of Ordinances.
Officer Reineke prepared a citation (No. 131818 8) to Greg Baldwin, alleging that "on or about 11/10/2013 at 2:30 PM defendant did unlawfully Operate Motor Vehicle/Boat RED UTV ... upon a public highway at NORTH 4TH STREET
*262 located in the county and state aforesaid and did then and there commit the following offense: Violation ATV OR OFF ROAD UTIL VEH/OPERATION ON HIGHWAYS AND [sic] ... Local Ord E-321I.10 ICIS E-S/321I.10." Defendants' Appendix at 17. The citation issued on November 11, 2013. Officer Reineke went to the Baldwin residence to serve the citation on November 11, 2013, but no one was home. Because Reineke was scheduled to be off work in the days that followed, he e-filed the citation with the notation: "Request Warrant." On November 12, 2013, David D. Forsyth, Magistrate, Third Judicial District of Iowa, entered an Order directing that a warrant issue. Defendants' Appendix at 18. On November 13, 2013, Officer Hellickson served the warrant on Baldwin, while he was in the parking lot at his grandchild's school, in front of his wife and a large number of people, arrested him, and took him to jail, where he was booked. Baldwin's wife came to the jail and posted bond, and Baldwin was released. Subsequently, Baldwin entered a written plea of not guilty to the charge, and trial was set for May 15, 2014.
The defendants allege that, in the days that followed, City Attorney Christopher Fuhrman discovered that the City had not included Iowa Code Ch. 321I when it incorporated Iowa Code Ch. 321 into the Code of Ordinances. They also allege that neither Shatto, Reineke, nor Hellickson knew this; rather, all were operating under the mistaken belief that the adoption and incorporation of Iowa Code Ch. 321 by the City Council included Iowa Code Chs. 321A through 321M. Baldwin disputes these contentions as inconsistent with the meeting that he had with City police officers in 2006 about operation of ATVs in the City; the express incorporation of "chapter 321," not any other chapter of the Iowa Code, into the Code of Ordinances; and the existence of Chapter 9 of the Code of Ordinances. Mr. Fuhrman was granted leave to amend the charge to allege a violation of a different ordinance, City Ordinance 219-2(2). Defendants' Appendix at 28-29. After Baldwin's counsel filed a Motion For Adjudication Of Law Points And To Dismiss, and the City filed its response, the court found "that the cited act is not in violation of the city code as written and the case is DISMISSED, costs assessed to the City of Estherville." Defendants' Appendix at 30-37.
Baldwin alleges that, because of his arrest, he suffered mental and emotional harm and anguish, anxiety, fear, degradation, disgrace, uncertainty, apprehensiveness, restlessness, dismay, tension, and unease. He contends that his wife confirmed the effect on him in her deposition. The defendants deny that Baldwin has produced any evidence to support these claims of harm.
Baldwin v. Estherville , 218 F.Supp.3d 987, 992-93 (N.D. Iowa 2016) (omissions in original) (footnote omitted).
The Estherville City Code incorporated Iowa Code chapter 321 via ordinance E-321.1, which stated,
All sections of the state statutory law, rules of the road, Chapter 321 of the Code of Iowa the offense of which constitutes a simple misdemeanor, are hereby adopted and incorporated by this reference the same as if set forth in full herein into the Code of Ordinances of the City of Estherville, Iowa, and the violation of such applicable state statutory laws of the road shall be a violation of this chapter if the offense occurs within the territorial city limits of the City of Estherville.
*263 Estherville, Iowa, Code of Ordinances, tit. II, div. 1, ch. 7, § E-321.1
Iowa Code section 321.234A covers operation of ATVs and provides,
All-terrain vehicles shall not be operated on a highway unless one or more of the following conditions apply:
....
f. The all-terrain vehicle is operated on a county roadway in accordance with section 321I.10, subsection 2, or a city street in accordance with section 321I.10, subsection 3.
Iowa Code § 321.234A(1)(f ) (2013).
Iowa Code section 321I.10 also covers ATVs and provides,
1. A person shall not operate an all-terrain vehicle or off-road utility vehicle upon roadways or highways except as provided in section 321.234A and this section.
2. A registered all-terrain vehicle or off-road utility vehicle may be operated on the roadways of that portion of county highways designated by the county board of supervisors for such use during a specified period. The county board of supervisors shall evaluate the traffic conditions on all county highways and designate roadways on which all-terrain vehicles or off-road utility vehicles may be operated for the specified period without unduly interfering with or constituting an undue hazard to conventional motor vehicle traffic. In designating such roadways, the board may authorize all-terrain vehicles and off-road utility vehicles to stop at service stations or convenience stores along a designated roadway.
3. Cities may designate streets under the jurisdiction of cities within their respective corporate limits which may be used for the operation of registered all-terrain vehicles or registered off-road utility vehicles. In designating such streets, the city may authorize all-terrain vehicles and off-road utility vehicles to stop at service stations or convenience stores along a designated street.
Id. § 321I.10.
The parties now agree that Iowa Code section 321.234A had been incorporated into the Estherville ordinances by ordinance E-321.1, but section 321I.10 had not been so incorporated.
As noted above, City Attorney Fuhrman later amended the charge against Baldwin to allege a violation of a different, free-standing city ordinance, 219.2(2). This ordinance reads,
ATV/UTVs may be operated upon the streets of the City of Estherville, Iowa, except as prohibited in Subsection 1 of this section, by persons possessing a valid Iowa Driver's License.
1. Prohibited Streets. ATV/UTVs shall not be operated upon any city street which is a primary road extension through the city, to wit: Iowa Highway No. 4 and Iowa Highway No. 9. However, ATV/UTVs may cross such primary road extensions.
2. Parks and Other Public Lands. ATV/UTVs shall not be operated off-road in city parks, playgrounds, or upon any publicly-owned property.
3. Private Property. ATV/UTVs may only be operated upon private property with express consent of the owner thereof or while engaged in snow removal, landscaping, or other maintenance activities.
4. Sidewalk or Parking. No ATV/UTV shall be operated upon sidewalks unless engaged in snow removal or maintenance activities (except along the south sidewalk from South First Street to West South First Street) nor shall they be operated upon that portion of the *264 street located between the curb line and sidewalk or property line commonly referred to as the "parking" except for purposes of snow removal, maintenance, or landscaping activities.
Estherville, Iowa, Code of Ordinances, tit. II, div. 1, ch. 9, 219.2(2). Regardless, as noted above, the district court dismissed the criminal complaint on the ground that Baldwin's conduct was "not in violation of the city code as written."
On November 4, 2015, Baldwin filed a civil suit in the Iowa District Court for Emmet County against the City and Officers Reineke and Hellickson, individually and in their official capacities as officers of the Estherville Police Department. In addition to a common-law false arrest claim, Baldwin also alleged violations of his rights under article I, sections 1 and 8 of the Iowa Constitution and his rights under the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. Baldwin sought money damages as relief.
On November 20, the defendants removed the case to the United States District Court for the Northern District of Iowa on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. The defendants subsequently filed an answer to Baldwin's claims, denying liability and asserting immunity from suit as an affirmative defense. Trial was set for April 17, 2017.
On July 19, 2016, the defendants moved for partial summary judgment on the federal constitutional claim and the common law false arrest claim, and Baldwin responded with his own motion for partial summary judgment on August 11. On November 18, the federal district court granted the defendants' motion as to Baldwin's § 1983 claim on two bases: that the officers did not lack probable cause for Baldwin's arrest and that they were entitled to qualified immunity.[1] The court also granted summary judgment to the defendants *265 on the common-law false arrest claim. The court stayed any ruling on the Iowa constitutional claims until this court issued its opinion in Godfrey v. State , 898 N.W.2d 844 (Iowa 2017).
On October 4, 2017, after we had issued our Godfrey decision, the district court certified this question of law to us: "Can a defendant raise a defense of qualified immunity to an individual's claim for damages for violation of article I, § 1 and § 8 of the Iowa Constitution ?"
II. Standard of Review and Criteria for Answering a Certified Question.
Iowa Code section 684A.1 provides,
The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.
Iowa Code § 684A.1 (2017).
Accordingly, we have said,
It is within our discretion to answer certified questions from a United States district court. We may answer a question certified to us when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause ... pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent.
Roth v. Evangelical Lutheran Good Samaritan Soc'y , 886 N.W.2d 601, 605 (Iowa 2016) (omission in original) (quoting Estate of Corrado , 838 N.W.2d at 643 ).
We conclude that these four criteria have been met here and we should answer the certified question. To do so, we will first briefly review our Godfrey decision and the status of governmental immunity in Iowa. We will then examine how other jurisdictions that allow constitutional tort damages claims have treated the question of qualified immunity. Finally, we will consider relevant Iowa precedent and answer the certified question.
III. Godfrey v. State .
Last year, in Godfrey , we held that the State of Iowa and state officials acting in their official capacities could be sued directly for violating article I, section 6 (the Iowa equal protection clause) and article I, section 9 (the Iowa due process clause), where state law does not provide an adequate compensatory damage remedy. See 898 N.W.2d at 846-47 (majority opinion); id. at 880-81 (Cady, C.J., concurring in part and dissenting in part). We concluded that with respect to discrimination based on sexual orientation, the Iowa Civil Rights Act provided an adequate remedy and thus no claim was available under article I, section 6. Id. at 881. We did not reach the same conclusion with respect to the due process violations alleged in the petition. Id. at 880-81.
We expressly deferred consideration of whether qualified immunity applied to these constitutional tort claims. Id. at 879. That is the issue we are now asked to address.
IV. Governmental Immunity in Iowa.
Tort claims against the government in Iowa are governed by chapter 669, for *266 state tort claims, and chapter 670, for municipal tort claims. These chapters apply both to claims against the governmental entity itself and to claims against governmental employees acting in their official capacity.
Each chapter exempts certain claims from liability. These exemptions include the discretionary function exception. Iowa Code § 669.14(1) ; id. § 670.4(1)(c ). The discretionary function exception in the state tort claims act exception applies to
[a]ny claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.
Id. § 669.14(1). The exception in the municipal tort claims act is worded similarly and applies to
[a]ny claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.
Id. § 670.4(1)(c ).
In addition to this exemption, there are similar exemptions in both acts for tax claims, claims covered by workers' compensation, claims for negligent design or specification or failure to upgrade roads or public improvements, and punitive damages. See id. §§ 669.4(2), .14(2), (5), (8), (9); id. § 670.4(1)(a ), (b ), (e ), (g ), (h ). Still other exemptions can be found in both chapters.
V. Review of Other Jurisdictions.
As we noted in Godfrey , "The states that have considered the issue are nearly equally divided in whether to recognize implied constitutional actions for damages or whether to decline to recognize such actions." 898 N.W.2d at 856-57 (footnotes omitted). We cited fourteen jurisdictions as recognizing direct damage actions under their state constitutions: California, Connecticut, Illinois, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Montana, New Jersey, New York, North Carolina, Texas, and Wisconsin. See id. at 856 n.2.
We will now review these jurisdictions to determine what immunities, if any, they allow for constitutional tort claims. Our conclusion is that most of these jurisdictions either recognize a federal-type immunity, such as the district court applied to the federal constitutional claims here, or subject constitutional claims to the defenses otherwise available under the state's tort claims act (or similar statute).
A. States That Recognize Harlow v. Fitzgerald Immunity. Under federal law, officials are entitled to qualified immunity from constitutional claims. That is, they cannot be sued when "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This immunity applies both to claims based on 42 U.S.C. § 1983 and to Bivens actions derived directly from the United States Constitution. See, e.g. , *267 Wood v. Moss , --- U.S. ----, 134 S.Ct. 2056, 2066-67, 188 L.Ed.2d 1039 (2014) ; Harlow , 457 U.S. at 818, 102 S.Ct. at 2738 & n.30.
Two states that allow direct claims under their own state constitutions-Connecticut and Louisiana-also provide Harlow -type immunity.
In Binette v. Sabo , the Connecticut Supreme Court recognized a damages cause of action for a violation of the state constitution. 244 Conn. 23, 710 A.2d 688, 700-01 (1998). The individual defendants in that case had allegedly entered the plaintiffs' home without permission or a warrant. Id. at 689. However, the court made an important distinction between the conduct of the government officials in that case-which it characterized as "egregious"-and conduct that was undertaken "reasonably and in good faith." See id. at 701 n.23. In the latter circumstance, the court anticipated that the individual defendants would be shielded from liability. Id.
Later, in Fleming v. City of Bridgeport , the Connecticut Supreme Court found that a Harlow -style qualified immunity was available to municipal officers for damages actions following illegal searches when "it was objectively reasonable for them to believe that their actions would not violate a clearly established right of the plaintiff's under the circumstances." 284 Conn. 502, 935 A.2d 126, 144 (2007). The plaintiff's suit was then found to be barred by this qualified immunity. Id. at 146 ("[W]e cannot say ... that their approach under the circumstances of this case was so unreasonable as to justify abrogation of their qualified immunity."). Harlow was not cited, but the court used a standard similar to that in Harlow . See id. at 144 ; see also Harlow , 457 U.S. at 818, 102 S.Ct. at 2738.
Louisiana also utilizes the federal qualified immunity standard. In Moresi v. Department of Wildlife & Fisheries , the plaintiffs sought recovery under the Louisiana constitutional right to be free from unreasonable searches, seizures, and invasions of privacy. 567 So.2d 1081, 1091 (La. 1990). The Louisiana Supreme Court "conclude[d] that damages may be obtained by an individual for injuries or loss caused by a violation of Article I, § 5 of the 1974 Louisiana Constitution." Id. at 1093. However, the court also determined that the plaintiffs could not recover against the state officers because
[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution.
Id. Qualified immunity would be available "if the defendant show[ed] that the state constitutional right alleged to have been violated was not clearly established." Id. at 1094.
Two other jurisdictions we cited in Godfrey as allowing direct constitutional damage claims actually authorize such claims through enabling statutes-Massachusetts and New Jersey. Both states have determined that Harlow immunity applies to such claims, in addition to defenses expressly written into the statutes themselves.
Thus, in Massachusetts, state constitutional tort claims may be pursued via the state civil rights act. See Martino v. Hogan , 37 Mass.App.Ct. 710, 643 N.E.2d 53, 59-60 (1994). This act appears to be the exclusive avenue for pursuing such claims. See id. at 60. And such constitutional claims are subject to two separate limits. First, the Massachusetts Supreme Judicial Court has concluded that the legislature, "in enacting the [state civil rights act], intended to adopt the standard of immunity for public officials developed under [federal law]."
*268 Rodriques v. Furtado , 410 Mass. 878, 575 N.E.2d 1124, 1127 (1991). Furthermore, under the express terms of the civil rights act, the plaintiff must prove that a constitutional right has been interfered with "by threats, intimidation, or coercion." Glovsky v. Roche Bros. Supermarkets, Inc. , 469 Mass. 752, 17 N.E.3d 1026, 1035 (2014) (quoting Mass. Gen. Laws ch. 12, § 11H ).
New Jersey has also authorized the bringing of state constitutional claims by statute through the New Jersey Civil Rights Act. See Gormley v. Wood-El , 218 N.J. 72, 93 A.3d 344, 358 (2014). Yet as in Massachusetts, a qualified immunity defense is available that "tracks the federal standard" in Harlow . Brown v. State , 230 N.J. 84, 165 A.3d 735, 743 (2017). This shields from liability all public officials except those who are "plainly incompetent or those who knowingly violate the law." Morillo v. Torres , 222 N.J. 104, 117 A.3d 1206, 1215 (2015) (quoting Connor v. Powell , 162 N.J. 397, 744 A.2d 1158, 1164 (2000) ).[2]
B. States That Limit Liability to That Authorized by the State Tort Claims Act. Other states rely on their tort claims acts to demarcate the outer scope of constitutional damages liability. Officials and the state, in other words, receive the immunities contained within the tort claims act and are liable only when the act would render them liable.
Illinois, one jurisdiction we cited in Godfrey , follows this approach. In Newell v. City of Elgin , the plaintiff sued over a violation of his right against unreasonable searches and seizures set forth in the Illinois Constitution. 34 Ill.App.3d 719, 340 N.E.2d 344, 346-47 (1976). The court determined that the state tort immunity statute governed. Id. at 347-48, 340 N.E.2d 344, 346-47. Under the statute, "a public employee is not liable for his act in the execution or enforcement of any law unless his act 'constitutes willful and wanton negligence.' " Id. at 348, 340 N.E.2d 344, 346-47 (quoting 85 Ill. Rev. Stat. § 2-202 (1973) ). Although this elevated standard applied, the court found that the defendant police officers had been guilty of willful and wanton negligence and therefore were not shielded by the statutory immunity. Id. ; see also Commerce Bank, N.A. v. Widger , No. 3-10-0647, 2011 WL 10468212, at *2 (Ill. App. Ct. Nov. 7, 2011) (deciding that a claim under the Illinois Constitution's search and seizure clause, even if available, was subject to the terms of the State Lawsuit Immunity Act).
So too Maryland. In Lee v. Cline , the Maryland Court of Appeals discussed the interplay between constitutional torts and the immunity provided by the state tort claims act. 384 Md. 245, 863 A.2d 297, 303-10 (2004). In that case, the plaintiff brought suit alleging a violation of his rights under the Maryland Declaration of Rights after he was unlawfully detained in his car allegedly because of his race and *269 the kind of car he was driving. Id. at 301. The court surveyed its prior cases as supporting the position that "constitutional torts are covered by the Maryland Tort Claims Act, thereby granting state personnel qualified immunity for such torts." Id. at 304-05.
In Maryland, the state tort claims act also limits the state's liability for a constitutional tort. See Cooper v. Rodriguez , 443 Md. 680, 118 A.3d 829, 844-45 (2015). Under that act, the state is immune from liability for constitutional claims if the official's actions stem from malice or gross negligence. Id. at 854 ; see also Brooks v. Jenkins , 220 Md.App. 444, 104 A.3d 899, 908 (2014) ("If the employee is found ... to have acted with malice or gross negligence, even though in the course of his employment, the State does not assume liability for his conduct."). Furthermore, the state's liability cannot exceed $200,000 per claimant per incident. See Cooper , 118 A.3d at 845.
Claims against local governments are also limited. In Clea v. Mayor of Baltimore , the Maryland Court of Appeals originally said that "a public official who violates a plaintiff's rights under the Maryland Constitution is entitled to no immunity." 312 Md. 662, 541 A.2d 1303, 1312 (1988). But in a later case also involving the Baltimore police department, which arose after Maryland passed its local government tort claims act, the same court indicated that claims against local officials and local governmental entities are subject to the terms of that act, including a cap on damages per individual claim. Houghton v. Forrest , 412 Md. 578, 989 A.2d 223, 229-32 & n.5 (2010) ; see also D'Aoust v. Diamond , 424 Md. 549, 36 A.3d 941, 962 (2012) (stating that Clea has been "super[s]eded by statute"). In short, even as to claims based on the Maryland Declaration of Rights, "Maryland public officials may ... claim immunity for their official acts on statutory grounds." Houghton , 989 A.2d at 229.
Based on Clea , Maryland is sometimes cited as a state that refuses to extend common law immunities to constitutional tort claims. See, e.g. , Gary S. Gildin, Redressing Deprivations of Rights Secured by State Constitutions Outside the Shadow of the Supreme Court's Constitutional Remedies Jurisprudence , 115 Penn St. L. Rev. 877, 903-04 (2011). But this is only part of the story because Maryland's courts have given effect to statutory immunities.
Likewise Mississippi. In City of Jackson v. Sutton , the Mississippi Supreme Court found that the plaintiff's constitutional damage claims were barred by the immunity provisions of the Mississippi tort claims act, which contained the exclusive avenue for relief. 797 So.2d 977, 980-81 (Miss. 2001). Only declaratory actions and not damage claims could be brought outside the act. Id. at 980.
In addition, as already noted, it appears that constitutional damage actions in Massachusetts and New Jersey are subject to the limits in the relevant statute-although in those two states it is the civil rights act rather than the tort claims act.
New York also subjects constitutional tort claims to the statutory framework applicable to other tort claims against the state. In Brown v. State , the New York Court of Appeals held "that a cause of action to recover damages may be asserted against the State for violation of the Equal Protection and Search and Seizure Clauses of the State Constitution." 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129, 1138-39 (1996). The claim arose from a five-day "street sweep" involving police stops of all nonwhite males in the city after an elderly white woman reported that a black male attacked her.
*270 Id. , 652 N.Y.S.2d 223, 674 N.E.2d at 1131-32. The claimants asked the court to recognize constitutional tort claims for money damages under the New York Constitution. Id., 652 N.Y.S.2d 223, 674 N.E.2d at 1133.
The court acknowledged that "if we are to recognize a damage remedy it must be implied from the Constitution itself." Id., 652 N.Y.S.2d 223, 674 N.E.2d at 1137. The court held that "[a] civil damage remedy cannot be implied for a violation of the State constitutional provision unless the provision is self-executing." Id. The court concluded that the search and seizure and equal protection clauses of the state constitution were self-executing but acknowledged that a claim for damages also required a determination of "whether the remedy of damages for the invasion of ... rights [established by the self-executing provisions] will be recognized." Id. , 652 N.Y.S.2d 223, 674 N.E.2d at 1137-38.
The court noted that injunctive or declaratory relief would not help the claimants, nor would exclusion, because the claimants were not charged with a crime. Id., 652 N.Y.S.2d 223, 674 N.E.2d at 1141. Therefore, damages were a necessary deterrent for the State's misconduct. Id. The court concluded, "[b]y recognizing a narrow remedy for violations of [the state equal protection and search and seizure clauses], we provide appropriate protection against official misconduct at the State level." Id.
Notably, New York has waived its sovereign immunity for damages actions against the State. Id. ; id. , 652 N.Y.S.2d 223, 674 N.E.2d at 1146 (Bellacosa, J., dissenting) ("The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations." (Emphasis omitted.) (quoting N.Y. Ct. Cl. Act. § 8 (McKinney))). The majority in Brown concluded that this waiver removed the defense of sovereign immunity for tort actions, including constitutional torts. Id., 652 N.Y.S.2d 223, 674 N.E.2d at 1134-36 (majority opinion). The dissent disagreed that the waiver should be applied in constitutional tort cases. See id., 652 N.Y.S.2d 223, 674 N.E.2d at 1147-48 (Bellacosa, J., dissenting).
However, the majority pointed out that many of the legal defenses identified by the dissent can be raised by the state "to avoid paying damages for some tortious conduct because, as a matter of policy, the courts have foreclosed liability." Id., 652 N.Y.S.2d 223, 674 N.E.2d at 1141 (majority opinion). These defenses include legislative or judicial immunity, immunity for "quasi-judicial or discretionary actions," the "special duty rule" (under which "a plaintiff cannot recover against a municipality for failure to supply police protection or similar services absent a special relationship between the plaintiff and the police or municipality"), and immunity from punitive damages. Id.
No New York decisions after Brown have considered whether a defendant can assert the defense of qualified immunity. Instead, the courts generally turn down constitutional tort claims because other remedies are available. In a 2001 case, the New York Court of Appeals rejected a constitutional tort claim arising out of an unlawful search, reasoning as follows:
Moreover, plaintiff fails to demonstrate how money damages are appropriate to ensure full realization of her asserted constitutional rights. Even after years of discovery, plaintiff has not distinguished her case from that of any criminal defendant who has been granted suppression, or reversal of a conviction, based on technical error at the trial level. Plaintiff has shown no grounds *271 that would entitle her to a damage remedy in addition to the substantial benefit she already has received from dismissal of the indictment and release from incarceration.
Martinez v. City of Schenectady , 97 N.Y.2d 78, 735 N.Y.S.2d 868, 761 N.E.2d 560, 564 (2001) ; see, e.g. , Shelton v. N.Y. State Liquor Auth. , 61 A.D.3d 1145, 878 N.Y.S.2d 212, 218 (2009) ("Although, in limited situations, a private cause of action to recover monetary damages for state constitutional violations can arise, no such claim will lie where the claimant has an adequate remedy in an alternate forum." (Citations omitted.)).
C. States That Impose a Higher Burden on Bringing a Constitutional Tort. In two states referenced in Godfrey , i.e., Michigan and Wisconsin, courts have determined that constitutional tort damage claims are available but have subjected such claims to a more demanding legal standard. In Michigan, the violation must have resulted from a state custom or policy to hold the state liable. In Wisconsin, the court required an intentional violation of the state constitution.
Constitutional torts in Michigan have their genesis in Smith v. Department of Public Health , 428 Mich. 540, 410 N.W.2d 749 (1987). There, one plaintiff brought an action against state and public officials for an alleged violation of the state and federal constitutions, and another plaintiff sued the director of state police for alleged violations of his civil rights. Id. at 753-54, 767. Among other holdings, the court explicitly noted two things: 1) "Where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action," and 2) "A claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." Id. at 751. Although one of the plaintiff-appellants was found not to have preserved the issue for review, the court remanded the other's case for a determination of whether a violation of the constitutional right had been alleged and had occurred and whether a damage remedy would be available. Id.
Subsequent cases, however, have limited the reach of Smith . See, e.g. , Lewis v. State , 464 Mich. 781, 629 N.W.2d 868, 868, 872 (2001) (rejecting a private cause of action under the equal protection clause of the Michigan Constitution "because the plain language of this constitutional provision leaves its implementation to the Legislature"). In Carlton v. Department of Corrections , the court of appeals emphasized that for the state to be liable for a constitutional tort, a state "custom or policy" must have mandated the official or employee's actions. See 215 Mich.App. 490, 546 N.W.2d 671, 678 (1996). In Jones v. Powell , the supreme court narrowed its holding in Smith considerably when it held that the "decision in Smith provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee." 462 Mich. 329, 612 N.W.2d 423, 426 (2000) (per curiam).
Recently in Mays v. Snyder , a case arising out of the lead contamination of the water supply of Flint, Michigan, the court found the allegations of plaintiffs' complaint sufficient to allege a statewide governmental policy and, thus, sufficient to state a claim for damages under the due process clause of the Michigan Constitution. 916 N.W.2d 227, 241, 264-68, 2018 WL 559726, at *2, 19-22 (Mich. Ct. App. Jan. 25, 2018).
In Wisconsin, where the court of appeals has indicated that constitutional torts are *272 permissible under the Wisconsin Constitution, the plaintiff must meet a high burden to recover. See Old Tuckaway Assocs. Ltd. P'ship v. City of Greenfield , 180 Wis.2d 254, 509 N.W.2d 323, 328-29 & n.4 (Ct. App. 1993). In Old Tuckaway , the Wisconsin Court of Appeals found that the trial court "did not err in allowing plaintiffs to pursue a direct damage action based on an intentional denial of due process under the state constitution." Id. at 328 n.4. However, the court ultimately concluded that the plaintiff did not meet the burden of showing the intentional denial of due process and therefore did not address whether such a claim might be barred by statutory immunities. Id. at 330 n.5. Thus, not only did the court require an intentional tort, but the question of whether immunities-including the doctrine of qualified immunity-might bar constitutional tort claims against individual governmental defendants remains open.
D. States That Do Not Allow a Direct Constitutional Tort. Two states we cited in Godfrey for recognizing direct damage claims under state constitutions-California and Texas-no longer appear to do so.
In Godfrey , we referenced two California cases that date from 1979 and 1982 respectively. 898 N.W.2d at 856 n.2 (citing Gay Law Students Ass'n v. Pac. Tel. & Tel. Co ., 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592, 602 (1979) ; Laguna Publ'g Co. v. Golden Rain Found. of Laguna Hills , 131 Cal.App.3d 816, 182 Cal.Rptr. 813, 835 (1982) ). But currently in California, there is no constitutional provision under which a direct claim for damages is clearly available. The California Supreme Court and other California appellate courts have found that freestanding damages actions may not be brought for violations of the state constitutional rights to free speech, due process, equal protection, or the right to petition the government. See Degrassi v. Cook , 29 Cal.4th 333, 127 Cal.Rptr.2d 508, 58 P.3d 360, 367 (Cal. 2002) (freedom of speech); Katzberg v. Regents of Univ. of Cal. , 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339, 358 (Cal. 2002) (due process); MHC Fin. Ltd. P'ship Two v. City of Santee , 182 Cal.App.4th 1169, 107 Cal.Rptr.3d 87, 98-99 (2010) (right to petition); Carlsbad Aquafarm, Inc. v. State Dep't of Health Servs. , 83 Cal.App.4th 809, 100 Cal.Rptr.2d 87, 92 (2000) (due process); Gates v. Super. Ct. , 32 Cal.App.4th 481, 38 Cal.Rptr.2d 489, 512, 517 (1995) (equal protection).
In Hernandez v. Hillsides, Inc ., the California Supreme Court said it was "an open question whether the state constitutional privacy provision, which is otherwise self-executing and serves as the basis for injunctive relief, can also provide direct and sole support for a damages claim." 47 Cal.4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063, 1072 (Cal. 2009). Iowa has no comparable provision.
In Godfrey , we also cited Jones v. Memorial Hospital System , a Texas intermediate appellate decision. See 898 N.W.2d at 857 n.2 (citing Jones , 746 S.W.2d 891, 893-94 (Tex. App. 1988) ). But subsequent to Jones , the Texas Supreme Court has determined there is no right to sue for damages under the Texas Constitution. See City of Beaumont v. Bouillion , 896 S.W.2d 143, 149 (Tex. 1995) ("[T]here is no implied private right of action for damages under the Texas Constitution when an individual alleges the violation of speech and assembly rights."). In City of Elsa v. M.A.L. , three former police officers brought a constitutional tort action against the city when it allegedly disclosed to the media they had left the force following positive drug tests. 226 S.W.3d 390, 391 (Tex. 2007) (per curiam). The officers asserted violations of their state constitutional right to privacy and sought monetary damages and equitable *273 and injunctive relief. Id. The Texas Supreme Court reaffirmed that governmental entities could not be sued in damages for violating the Texas Constitution. Id. at 392.[3]
E. States Where Immunity Is an Open Issue. In two jurisdictions that permit direct constitutional claims for damages, Montana and North Carolina, immunity appears to be an open issue. Both jurisdictions allow constitutional damage claims only when there is no analogous statutory or common-law cause of action.
In Dorwart v. Caraway , 312 Mont. 1, 58 P.3d 128, 131, 137 (Mont. 2002), the Montana Supreme Court found that the plaintiff could bring a direct damages action for violation of the due process, search and seizure, and privacy clauses of the Montana Constitution. It declined to adopt a Harlow form of qualified immunity analogous to that available for violations of the United States Constitution. Id. at 139-40. However, it remains an open question whether statutory immunities generally available to public defendants can be used in the defense of constitutional tort actions. See Nickel v. Faycosh , No. DA 09-0032, 2009 WL 3319990, at *3-4 (Mont. Oct. 14, 2009) (declining to decide the issue). Furthermore, if adequate remedies exist under statutory or common law, the plaintiff is not entitled to bring a constitutional tort claim. See Sunburst Sch. Dist. No. 2 v. Texaco, Inc. , 338 Mont. 259, 165 P.3d 1079, 1093 (Mont. 2007) (finding that *274 the recent adoption of Restatement (Second) of Torts § 929 to allow for the recovery of restoration damages meant that the district court "erred in instructing the jury on the constitutional tort theory where ... adequate remedies exist under statutory or common law"); see also Salminen v. Morrison & Frampton, PLLP , 377 Mont. 244, 339 P.3d 602, 611 (Mont. 2014) ("Since the Salminens have a basis in law for a claim to redress this allegation, they need not proceed under the Constitution.").
North Carolina also falls into this wait-and-see category. In Corum v. University of North Carolina , the North Carolina Supreme Court decided that a plaintiff may recover damages for a violation of a state constitutional right when there is no common law or statutory remedy. 413 S.E.2d 276, 289 (N.C. 1992). That case involved alleged violations of the plaintiff's right to free speech, although other cases have involved other constitutional rights. See id. ; Sale v. State Highway & Pub. Works Comm'n , 242 N.C. 612, 89 S.E.2d 290, 297 (N.C. 1955) (recognizing a cause of action under the state due process clause); Adams v. City of Raleigh , 245 N.C.App. 330, 782 S.E.2d 108, 114-15 (N.C. Ct. App. 2016) (finding that common-law false arrest provided a sufficiently analogous remedy to preclude a constitutional claim, even if such a false arrest claim might not succeed in the particular case); Davis v. Town of S. Pines , 116 N.C.App. 663, 449 S.E.2d 240, 248 (N.C. Ct. App. 1994) (finding plaintiff's "constitutional right not to be unlawfully imprisoned and deprived of her liberty [was] adequately protected by her common law claim of false imprisonment," and she could thus not bring a constitutional tort claim). The Corum court noted that
when public officials invade or threaten to invade the personal or property rights of a citizen in disregard of law, they are not relieved from responsibility by the doctrine of sovereign immunity even though they act or assume to act under the authority and pursuant to the directions of the State.
413 S.E.2d at 292. However, although officials could be sued in their official capacities, they could not be sued in their individual capacities. Id. at 292-93.
Later, that court addressed this issue again in Craig ex rel. Craig v. New Hanover County Board of Education when a plaintiff filed a damages action against the board of education and the principal of his middle school in her individual and official capacities after the plaintiff was sexually assaulted. 363 N.C. 334, 678 S.E.2d 351, 352 (N.C. 2009). The court's holding indicated that the defense of sovereign immunity cannot be applied to prevent a plaintiff from redressing a constitutional wrong. Id. at 356-57. However, the court also limited its ruling by stating,
This holding does not predetermine the likelihood that plaintiff will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case. Rather, it simply ensures that an adequate remedy must provide the possibility of relief under the circumstances.
Id. at 355. Thus, other defenses may not necessarily be precluded, even if they would leave the plaintiff without a remedy. As one commentator queried,
Does being time-barred by a statute of repose preclude the possibility of relief? What about qualified immunity? In Craig , a direct constitutional claim was allowed because Craig's claim was precluded by governmental immunity, "regardless of his ability to prove his case." What was left unclear, however, is whether any other procedural bar or well-pled defense would be treated differently.
*275 Matthew R. Gauthier, Kicking and Screaming: Dragging North Carolina's Direct Constitutional Claims into the Twenty-First Century , 95 N.C. L. Rev. 1735, 1747-48 (2017) (hereafter Gauthier, Kicking and Screaming ) (footnotes omitted) (quoting Craig , 678 S.E.2d at 355 ).
VI. The Proper Approach in Iowa.
A. Strict Liability Would Go Too Far. This leads us to Iowa law and the certified question.
To begin with, we are convinced that constitutional tort claims in Iowa should be subject to some limit . As we have already seen, the other states that allow such claims limit liability in some fashion, except for Montana and North Carolina. Those two states have not decided the issue yet.
Consider also the three Iowa precedents we singled out in Godfrey for having recognized constitutional torts. See 898 N.W.2d at 862-63. Each involved bad faith conduct, and one of those cases made it clear that malice and lack of probable cause were elements of the claim.
McClurg v. Brenton arose when a search party forced their way late at night into a house suspected of harboring stolen chickens, although the party lacked a warrant and although nighttime searches were illegal at the time in the absence of special authority. 123 Iowa 368, 369-70, 372, 98 N.W. 881, 881-82 (1904). We further described the exceptional circumstances of the case as follows:
There is testimony, also, that the search was conducted, by some of the party, at least, in a loud and boisterous manner, and with little regard for the sensibilities of the plaintiff and his family. One of the searchers candidly admits that he was a "little enthused," and did not pay much attention to the details; and it is said by one witness that another member of the party became somewhat confused as to the real object of the search, and demanded to know whether there was "any beer in the cellar." The discouraging answer that there "was no cellar" seems not to have been fully credited, for it is further testified that the knot holes in the floor were carefully probed with a pocket rule, to ascertain the amount of available space thereunder. Upon such a state of the record, we think it very clear that the jury should have been allowed to pass upon the issue of fact presented by the pleadings. If plaintiff's home was invaded in the manner claimed by him, he has suffered a wrong for which the law will afford him substantial remedy.
Id. at 371, 98 N.W. at 882.
Krehbiel v. Henkle was another case involving egregious misconduct in connection with a search. 142 Iowa 677, 678-79, 121 N.W. 378, 379 (1909). There we were explicit that "evidence of malice and want of probable cause for the prosecution must be shown in order to sustain a recovery of damages." Id. at 680, 121 N.W. at 380. After invoking article I, section 8 we said, "[A] violation of this right without reasonable ground therefor gives the injured party a right of action." Id. (emphasis added).[4]
*276 Lastly, in Girard v. Anderson , we held that when two private individuals broke into a locked home to forcibly repossess property, the homeowner had a cause of action against them for trespass and conversion. 219 Iowa 142, 144-45, 148, 257 N.W. 400, 400-01, 403 (1934). The case involves private defendants and therefore does not speak to the standards for the recovery of damages against government defendants. See id. at 144, 257 N.W. at 400. Even so, the facts presented by the plaintiff involved forcibly breaking and entering. Id.
In short, some limits are consistent with the Iowa precedent we invoked in Godfrey.
We further note that at the time our Constitution was adopted, public officials received the benefit of a form of qualified immunity. In Hetfield v. Towsley , we rejected a claim against a justice of the peace and constable for wrongly taking away the plaintiff's oxen. 3 Greene 584, 584-85 (Iowa 1852). We explained,
The justice and constable, in what they did, were in the performance of official duty. Unless they exceeded their jurisdiction, or acted corruptly, or without authority of law, they are not liable. Although the justice might have acted erroneously, still he was not liable as a trespasser. The injured party had his remedy by certiorari or appeal. The demurrers admit the official character of the officers, and also that they acted in good faith, as stated by them in their special pleas.
Id. at 585. Hetfield cannot be explained as a judicial immunity case because the court also exonerated the constable. See also Howe v. Mason , 12 Iowa 202, 203-04 (1861) ("Officers required by law to exercise their judgment are not answerable for mistakes in law or mere errors of judgment without any fraud or malice. "); Plummer v. Harbut , 5 Iowa 308, 311-14 (1857) (finding that where the defendants broke and entered the plaintiff's close pursuant to a warrant and took and destroyed the liquors therein, even though the entry was without proper authority the plaintiff could not recover the value of the illegal liquors and could recover only nominal damages for the breaking and entering because the defendants had acted in good faith).
In addition, our conclusion in Godfrey that the Iowa Constitution can sustain a damages remedy without prior action by the Iowa legislature does not mean the Iowa courts have no role in crafting that remedy. Nor does it mean that traditional tort rules are irrelevant. The Restatement (Second) of Torts section 874A makes both of these points. Restatement (Second) of Torts § 874A (Am. Law Inst. 1979). That particular section covers "Tort Liability for Violation of Legislative Provision," while including "constitutional provisions" within its scope. See id. & cmt. a . As we noted in Godfrey , section 874A has been cited as support for constitutional damage claims in other jurisdictions. See 898 N.W.2d at 858, 860.
Section 874A contemplates that a court implying a constitutional (or statutory) cause of action will "us[e] a suitable existing tort action or a new cause of action analogous to an existing tort action." See Restatement (Second) of Torts § 874A. Comment f reiterates this point and states that a civil action to effectuate a constitutional provision "will ordinarily be assimilated to the most similar common law tort." Id. cmt. f . Comment j adds that
[w]hether the tort action provided by the court in furtherance of the policy of a legislative [or constitutional] provision *277 is to be treated as an intentional tort, as negligence or as a form of strict liability, or perhaps as involving all three ..., depends primarily upon construction of the statute [or constitutional provision] itself.
Id. cmt. j .
Moreover, strict damages liability for any constitutional wrong would lead to untenable results. On this point, it is worth analyzing a few of the cases where we found state and local officials were entitled to various immunities when claims had been brought against them under the United States Constitution through 42 U.S.C. § 1983. Should all those immunities vanish just because claims are also brought under the Iowa Constitution?
In Minor v. State , the plaintiff asserted that two employees of the Iowa Department of Human Services had improperly caused her child to be removed from her care and failed to protect that child once placed in foster care, in violation of her Fourth and Fourteenth Amendment rights. 819 N.W.2d 383, 392 (Iowa 2012). There, we determined that the employees were entitled to qualified immunity. Id. at 400-04.
In Teague v. Mosley , the plaintiff sued three of the five members of a county board of supervisors, alleging they had violated his constitutional rights by not providing a safe environment at the jail. 552 N.W.2d 646, 647 (Iowa 1996). We adopted a rule of absolute immunity for supervisors acting in a legislative capacity. Id. at 649.
In Dickerson v. Mertz , the plaintiff sued after having been issued citations for hunting without a valid license and later for "taking deer by auto," and subsequently having been acquitted of both charges. 547 N.W.2d 208, 210-11 (Iowa 1996). We determined that the defendant officers of the Department of Natural Resources were entitled to qualified immunity from federal constitutional claims because the "plaintiff ha[d] not shown a factual issue concerning the unreasonableness of defendants' actions based on the existing law." Id. at 215-16.
We believe the government officials in these cases would be reluctant to fully perform their jobs if they could be found strictly liable for actions that happened to violate someone's constitutional rights. There is a danger of overdeterrence. Search and seizure involves judgment calls. For example, in In re Pardee , 872 N.W.2d 384 (Iowa 2015), this court was recently divided on whether a twenty-five-minute investigatory stop of a vehicle was too long. Five members of our court said it was; two said it wasn't. See id. at 397 (concluding the stop had been impermissibly prolonged); id. at 397-99 (Cady, C.J., dissenting) (concluding the stop had not been improperly prolonged). The line between good police work and overzealous police work can be razor thin. It is certainly fair to exclude the evidence from any ensuing criminal proceeding whenever the line is crossed, even slightly. But if the law enforcement officer also is subject to a damage action, this could lead him or her to be reluctant to act at all in a gray area.[5]
*278 And there would be no reason for anyone-including judges-to get special treatment. For example, in this particular case, the magistrate who issued the arrest warrant for Baldwin would be subject to a damages suit as well.
It is true we said in State v. Tonn that "[a] trespassing officer is liable for all wrong done in an illegal search or seizure." 195 Iowa 94, 106, 191 N.W. 530, 535 (1923), abrogated by State v. Cline , 617 N.W.2d 277, 291 (Iowa 2000). But we said this to justify eliminating the exclusionary rule in Iowa. Id. at 106-07, 191 N.W. at 535-36. Tonn was not perhaps our court's most shining moment. It involved the prosecution of a member of the labor organization known as the International Workers of the World (IWW) who was "engaged in spreading the propaganda of the organization." Id. at 106, 191 N.W. at 535. Two justices dissented from the abandonment of the exclusionary rule, one of them also questioning the constitutionality of the law under which the defendant was prosecuted. Id. at 116, 120-21, 191 N.W. at 539, 541 (Weaver, J., dissenting). Today, we would probably view the IWW member's conduct as protected speech.
More recently, in Cline , we rejected a good-faith exception to the exclusionary rule under article I, section 8, making essentially the opposite point from what we had said in Tonn :
In our early Tonn case, we observed that the exclusionary rule was unnecessary to enforce the constitutional right because other remedies were available. Whatever truth there may have been to this statement when it was made, it is not valid today. There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation. A civil remedy would probably be unsuccessful because the good faith that prevents exclusion would also preclude an action for damages.
617 N.W.2d at 291. Cline is our law today: We have approved a comprehensive exclusionary rule cognizant of limits on damage actions.
Thus, the right to recover damages for a constitutional violation does not need to be congruent with the constitutional violation itself. Such an approach is not consistent with Iowa precedent or Restatement section 874A, and would result in too little play in the joints.[6] Logically, the threshold *279 of proof to stop an unconstitutional course of conduct ought to be less than the proof required to recover damages for it. Indeed, if a right of recovery for a constitutional tort existed whenever a constitutional violation occurred, it stands to reason that such recovery could not be subject to other limits, such as a statute of limitations. See Gauthier, Kicking and Screaming , 95 N.C. L. Rev. at 1747-48.[7]
B. Qualified Immunity Based on the Exercise of Due Care Should Be Available for Damage Claims Under Article I, Sections 1 and 8 . If strict liability is not the correct standard, what is? For purposes of article I, sections 1 and 8, we are convinced that qualified immunity should be available to those defendants who plead and prove as an affirmative defense that they exercised all due care to conform to the requirements of the law.
As we have noted, a number of states allow Harlow immunity for direct constitutional claims. In those jurisdictions, there cannot be liability unless the defendant violated "clearly established ... constitutional rights of which a reasonable person would have known." Harlow , 457 U.S. at 818, 102 S.Ct. at 2738. Harlow examines objective reasonableness; thus, in some ways it resembles an immunity for officials who act with due care. However, it is centered on, and in our view gives undue weight to, one factor: how clear the underlying constitutional law was. Normally we think of due care or objective good faith as more nuanced and reflecting several considerations. See, e.g ., Hetfield , 3 Greene at 585. Factual good faith may compensate for a legal error, and factual bad faith may override some lack of clarity in the law.
Other jurisdictions that have opened the doors to direct constitutional damage claims have done so within the framework of their existing tort claims acts. Often, these laws shield defendants who act with due care or even who are guilty of ordinary negligence. See, e.g. , Martin v. Brady , 261 Conn. 372, 802 A.2d 814, 819 (Conn. 2002) (finding the defendants would be liable only if their conduct was "wanton, reckless or malicious"); Newell , 340 N.E.2d at 348 ("[A] public employee is not liable for his act in the execution or enforcement of any law unless his act 'constitutes willful and wanton negligence.' " (quoting 85 Ill. Rev. Stat. § 2-202 (1973) )).
Iowa's tort claims acts already protect government officials in some instances when they exercise due care. See, e.g. , Iowa Code § 669.14(1) (excepting "[a]ny claim based upon an act or omission of an employee of the state, exercising due care , in the execution of a statute or regulation, *280 whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused" (emphasis added)); id. § 670.4(1)(c ) (excepting "[a]ny claim based upon an act or omission of an officer or employee of the municipality, exercising due care , in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused" (emphasis added)). The problem with these acts, though, is that they contain a grab bag of immunities reflecting certain legislative priorities. Some of those are unsuitable for constitutional torts.
A third set of jurisdictions simply impose higher fault standards as a prerequisite to liability. See Mays , 916 N.W.2d at 264-68, 2018 WL, at *19-22 (requiring a showing of a custom or policy); Old Tuckaway Assocs. , 509 N.W.2d at 330 (requiring proof of an intentional denial of due process).
We have decided not to follow any of these lines of authority exactly. We believe instead that qualified immunity should be shaped by the historical Iowa common law as appreciated by our framers and the principles discussed in Restatement (Second) of Torts section 874A.
This means due care as the benchmark. Proof of negligence, i.e., lack of due care, was required for comparable claims at common law at the time of adoption of Iowa's Constitution. See Hetfield , 3 Greene at 585 ; Howe , 12 Iowa at 203-04. And it is still the basic tort standard today. See Restatement (Second) of Torts § 874A (discussing reliance on analogous tort standards).
Because the question is one of immunity, the burden of proof should be on the defendant. See Anderson v. State , 692 N.W.2d 360, 364 (Iowa 2005) (indicating that the party asserting the discretionary function immunity has the burden to prove it). Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law.[8]
We find support for our approach in a recent and thoughtful critique of Harlow . See John C. Jeffries Jr., The Liability Rule for Constitutional Torts , 99 Va. L. Rev. 207 (2013). Professor Jeffries notes, "The basic and essential remedy for most constitutional rights is the opportunity to assert them defensively against government coercion." Id. at 242. Nevertheless, Professor Jeffries concludes that "damages are appropriate to the vindication of constitutional rights, absent countervailing concerns, of which the most important and obvious would be superseding remedial legislation." Id. at 259 (footnotes omitted). "[C]onstitutional tort actions are presumptively appropriate." Id.[9]
*281 In the end, Professor Jeffries condemns Harlow as "an overly legalistic and therefore overly protective shield," but advocates for a more straightforward "protection for reasonable error." Id. at 258-60. "The problem with current law is its implicit equation of reasonable error with the space between decided cases." Id. at 260.[10]
We agree. Constitutional torts are torts, not generally strict liability cases. Accordingly, with respect to a damage claim under article I, sections 1 and 8, a government official whose conduct is being challenged will not be subject to damages liability if she or he pleads and proves as an affirmative defense that she or he exercised all due care to conform to the requirements of the law.
We leave open a number of other issues. These include the possibility that constitutional claims other than unlawful search and seizure may have a higher mens rea requirement, such as intent, embedded within the constitutional provision itself. In other words, it may take more than negligence just to violate the Iowa Constitution. They also include the possibility that common law absolute immunities, such as judicial immunity or quasi-judicial immunity, could apply to state constitutional claims. And they include the potential applicability of provisions in chapters 669 and 670 other than sections 669.14 and 670.4. We do not address those issues today.
VII. Conclusion.
We have provided the answer to the certified question as set forth above. Costs shall be divided equally among the parties. Iowa Code § 684A.5.
CERTIFIED QUESTION ANSWERED.
All justices concur except Appel and Hecht, JJ., who dissent.

The district court reasoned in part as follows:
Baldwin argues that Ordinance 219-2, which was actually part of the City's Code of Ordinances, plainly establishes the lack of probable cause for his arrest. I believe that the opposite is true. While Ordinance 219-2 does provide that "ATV/UTVs may be operated upon the streets of the City," it also provides "ATV/UTVs shall not be operated off-road in city parks, playgrounds, or upon any publicly-owned property." The officers knew from the video that they reviewed that Baldwin had operated his ATV in the ditch of a City street and that ditch was publicly-owned property. Indeed, the amended charge against Baldwin, after the City Attorney discovered that Ordinance E321I.10 did not exist, was an alleged violation of Ordinance 219-2(2) for driving on "publicly-owned property," because the video showed Baldwin driving his ATV in the ditch of a City street, which was, at least arguably, publicly-owned property.
The Iowa District Court ultimately dismissed the amended charge against Baldwin, but only after making two key constructions of pertinent Ordinances. First, the Iowa District Court construed the plain meaning of "street" in City Ordinances to include the "ditch." This conclusion was based on the definition of "street" in City Ordinance 110-102(23) as "mean[ing] and includ[ing] any public way, highway, street, avenue, boulevard, parkway, or other public thoroughfare ... and unless otherwise indicated in the text, shall include the entire width between the property lines." The Iowa District Court also construed "publicly-owned property" in Ordinance 219-2(2), to the extent that it conflicted with Ordinance 110-102(23), as not including the "ditch" of a City street. ... The Iowa District Court's after-the-fact constructions do not establish that a prudent person could not have believed, at the time of Baldwin's alleged offense, that he had committed a violation of Ordinance 219-2(2).... The officers had probable cause to arrest Baldwin for a violation of Ordinance 219-2(2).
Baldwin , 218 F.Supp.3d at 1000-01 (alterations in original) (first omission in original) (citations omitted).

Other states not cited in Godfrey for recognizing independent constitutional torts also provide Harlow -type immunity. For example, Vermont permits constitutional tort claims if the provision is self-executing and the legislature has fashioned no other adequate remedial scheme. See Shields v. Gerhart , 163 Vt. 219, 658 A.2d 924, 930, 934 (1995). "Where the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, [the Vermont courts] will ordinarily defer to the statutory remedy and refuse to supplement it." Id. at 934. When a constitutional damages claim is available, the Vermont Supreme Court has recognized Harlow qualified immunity as a defense. See Stevens v. Stearns , 175 Vt. 428, 833 A.2d 835, 842 (2003). In Stevens , the plaintiffs sued for the alleged violation of their rights against unreasonable searches under the state constitution. Id. at 839, 842. Without deciding whether a cause of action existed, the Vermont Supreme Court found it was barred by qualified immunity. Id. at 842.

Two other jurisdictions that have not recognized direct constitutional damage claims are Florida and Minnesota.
Florida intermediate appellate courts have repeatedly found that monetary damages are unavailable for violations of state constitutional rights. See Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles , 20 So.3d 915, 921 (Fla. Dist. Ct. App. 2009) ; Fernez v. Calabrese , 760 So.2d 1144, 1146 (Fla. Dist. Ct. App. 2000) ; Garcia v. Reyes , 697 So.2d 549, 549-50 (Fla. Dist. Ct. App. 1997). The state supreme court has never directly addressed this issue. See Resha v. Tucker , 670 So.2d 56, 57 (Fla. 1996) (finding that a constitutional violation by a state official acting outside the scope of her official duties did not give rise to an action for money damages under the specific facts of the case). One intermediate appellate court has said that even if such a cause of action against state officials existed, it would be barred by statutory immunity. See Garcia , 697 So.2d at 550 ("We further find that if [a cause of action for money damages against the state, its agencies or employees acting in their official capacities for police misconduct arising directly under the due process clause] existed, a lawsuit against the [city] and its police officer ... would be barred by sovereign immunity.").
Twenty-four years ago, in a case involving a tax that violated the Federal Constitution, the Florida Supreme Court said, "Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will." Dep't of Revenue v. Kuhnlein , 646 So.2d 717, 721, 724 (Fla. 1994). But Kuhnlein has not been used for that proposition by a Florida court since it was written. As noted, no Florida appellate court has actually recognized a direct damages claim under the Florida Constitution.
To date, Minnesota similarly has not recognized an action for damages for alleged violations of the state constitution. See Laliberte v. State , No. A13-0907, 2014 WL 1407808, at *2 (Minn. Ct. App. Apr. 14, 2014) ; Davis v. Hennepin County , No. A11-1083, 2012 WL 896409, at *2 (Minn. Ct. App. Mar. 19, 2012) ; see also Dean v. City of Winona , 868 N.W.2d 1, 9 (Minn. 2015) (Lillehaug, J., concurring) (describing the appellants' rejected theory of recovery of nominal damages under the remedies clause for a violation of the state constitution as "novel").
Thirty years ago, in Elwood v. Rice County , the Minnesota Supreme Court held that Harlow -style qualified immunity did not apply to state common law claims but that Minnesota's own official immunity doctrine applied. 423 N.W.2d 671, 677 (Minn. 1988). This doctrine requires proof of "a willful or malicious wrong." Id. (quoting Susla v. State , 311 Minn. 166, 247 N.W.2d 907, 912 (Minn. 1976) ). Regardless, Minnesota has not recognized stand-alone constitutional damage claims.

In Godfrey , we characterized Krehbiel as a damages action for violation of article I, section 8, not as a malicious prosecution case. 898 N.W.2d at 862. We quote Krehbiel again:
The right of the citizen to security in person and property against wrongful seizures and searches is one which the law has ever zealously safeguarded and has express recognition in our state Constitution. Const. Iowa, art. 1, § 8. That a violation of this right without reasonable ground therefor gives the injured party a right of action is thoroughly well settled.
142 Iowa at 679-80, 121 N.W. at 379-80. Krehbiel went on to note that "[t]he essence of the wrong done to [the plaintiff] was the unreasonable invasion of his home." Id. at 681, 121 N.W. at 380.

Furthermore, many lawful searches and seizures do not result in a criminal prosecution. Thus, when law enforcement chooses to perform a search or seizure, in many cases there will be no "benefit" to the government, only a risk of being subject to a damages action based on after-the-fact second-guessing. This may incentivize law enforcement not to go forward unless there is some protection for good-faith conduct.
An academic has raised some additional points about incentives:
Moreover, the incentives facing government officers are skewed by a cause-of-action problem. An individual hurt by government conduct usually knows exactly whom to blame. The causal connection between the plaintiff's injury and the defendant's conduct is typically clear, and the victim has no trouble stating a cause of action. A person injured by official inaction-by the officer who foregoes an arrest or the school principal who tolerates a troublemaker-often has difficulty identifying any officer responsible for subsequent injury and proving a causal connection. As a result, the risk of being sued for erroneous action is much higher than the risk of being sued for erroneous inaction, though the two may be equally costly. This disparity increases the incentive to protect oneself by doing less.
Even aside from the cause-of-action problem, the incentive structure of government officials encourages inaction. The idea is most plausible for civil servants, who face punishment or loss for demonstrable misconduct but who are rarely able to capture the gains of effective action.
John C. Jeffries Jr., The Liability Rule for Constitutional Torts , 99 Va. L. Rev. 207, 244-45 (2013) (footnotes omitted).
It is true that public officials are typically indemnified for damage actions against them. See Joanna C. Schwartz, Police Indemnification , 89 N.Y.U. L. Rev. 885, 890 (2014) ; Iowa Code § 669.5(2)(a ) ; id. § 670.8. But the indemnitor has the ability and the motive to influence the indemnitee's behavior. See, e.g., John Rappaport, How Private Insurers Regulate Public Police , 130 Harv. L. Rev. 1539, 1573-95 (2017).

According to Professor Jeffries,
some gap between constitutional rights and the damages remedy is a good thing. It is not a problem to be solved, but an asset to be preserved. Eliminating that gap entirely would have a baleful effect on the content and development of constitutional law. Jeffries, 99 Va. L. Rev. at 246. He goes on to explain that limitations on damages facilitate the evolution of constitutional law:
At each and every stage, from wholesale innovation to minor adjustment, these decisions found unconstitutional acts that previously could have been thought lawful. All these acts had victims, and all the victims had injuries. If awarding damages had been a necessary corollary of finding violations, the potential impact would have been staggering.
Id. at 248 (footnote omitted). Simply stated, "[u]nder current law, the prospect of awarding money damages does not constrain the definition of constitutional rights." Id.
For example, in Iowa, would it inhibit developments of article I, section 17 jurisprudence if every individual whose sentence was later determined to be unconstitutional could recover constitutional tort damages?

Of course, this does not mean constitutional violations would go unremedied. The issue is whether a direct damages remedy would be available.

We have in the past invalidated presumptions rendering one party responsible for another party's illegal conduct unless the first party proves he or she exercised due care. See Westco Agronomy Co. v. Wollesen , 909 N.W.2d 212, 222-23 (Iowa 2017) ; Hensler v. City of Davenport , 790 N.W.2d 569, 587-89 (Iowa 2010). That is not the situation here. The issue is what a defendant to a constitutional damages action under article I, sections 1 and 8 must show to obtain qualified immunity for his or her own conduct.

Professor Jeffries's stance here is similar to the one we took in Godfrey on the basic issue of whether constitutional torts should be allowed. Godfrey generally approved of direct damages actions under the Iowa Constitution but the special concurrence that provided the decisive vote determined that a damages remedy under article I, section 6 for discrimination based on sexual orientation was not needed in light of an existing, adequate remedy within the Iowa Civil Rights Act. See 898 N.W.2d at 880-81 (Cady, C.J., specially concurring).

Professor Jeffries acknowledges that "[o]n balance, academic opinion favors [strict liability for constitutional violations]." 99 Va. L. Rev. at 241. On the other hand, as we have discussed, no other state judiciary has opted for strict liability.